## HAMPSHIRE COUNTY.

ALLEN P. MERRICK & others *vs.* INHABITANTS OF AMHERST
& others.*

The legislature have power to pass a statute authorizing a town to raise money foɪ an agri-
cultural college to be established therein by the Commonwealth, under U. S. St. of 1862,
c. 130.

PETITION by ten tax-payers, and more, of Amherst, praying
for an injunction to restrain the town and its officers from issu-
ing bonds or raising money, to the amount of fifty thousand
dollars, on the credit of the town, for the Agricultural College,
under votes of the town passed in pursuance of *St.* 1865, *c.* 195,
entitled, "An act to authorize the town of Amherst to raise fifty
thousand dollars for the Agricultural College." The case is
stated in the opinion.

*J. Wells & W. Allen, Jr.*, for the petitioners.

*B. F. Thomas & T. L. Wakefield*, for the respondents.

BIGELOW, C. J.   The nature and extent of the power granted
to the legislature by that clause of the constitution, pt. 2, *c.* 1
§ 1, art. 4, which confers authority to lay and assess taxes, have
been recently very fully considered by this court.   *Freeland* v.
*Hastings*, 10 Allen, 570.   *Oliver* v. *Washington Mills*, 11 Allen,
268.   *Dorgan* v. *Boston, ante*, 223.   In these cases it has been
held that a just exposition of the language of the constitution
as applied to the subject matter, while it leads to the conclusion
that the power of taxation was not designed to be absolute or
unrestricted, and that a clear excess or abuse of its exercise may
ɔe checked and controlled, likewise shows that it was intended
to vest a very large discretion in the legislature, both as to the
purposes for which money may be raised by taxation, and as to
the moɟe in which certain public burdens requiring the expendi
ture of money may be apportioned and distribɟted among the

---

* This case was argɟed in Boston in June 1866, before all the judges **except**
DEWEY, J.

persons and upon the property of the citizens of the Common-
wealth. It must now be taken as the settled interpretation of
the constitution, that the limitation on the power of taxation
expressed by the words " reasonable and proportional taxes "
cannot be deemed to require that every assessment authorized
by law should be assessed on the whole property of the Com-
monwealth, or in proportion to the estate, real and personal,
which each person may possess; but that it is within the just
and proper limits of the authority granted to the legislature to
lay and assess taxes, to raise money for a public object, on a
particular town, district or section which may reasonably be
expected to derive some peculiar or special advantage or ben-
efit from an expenditure of money, which will not be enjoyed
to the same degree by other portions of the state ; and that such
taxes may be assessed, either on the polls and estates situated
and being within the territory so benefited in the manner in
which taxes are ordinarily laid, or they may be imposed on cer-
tain estates in proportion to a special benefit or advantage which
it may be found that each may receive from the construction of
a work of public utility or necessity.

Without again going over the reasons on which this interpre-
tation of the clause of the constitution relating to the power of
taxation vested in the legislature is based, it will be sufficient
for the decision of this case to ascertain whether the petitioners
have set forth and maintained any satisfactory grounds on which
it can be held that the authority given to the town of Amherst
by *St.* 1865, *c.* 195, " to raise fifty thousand dollars for the Agri-
cultural College," is illegal and invalid, for the reason that it
empowers the voters of the town to impose a tax which is not
" reasonable and proportional," in the sense in which these
words, as judicially interpreted, are used in the constitution.

At the outset of this inquiry, it is important to understand
the precise nature and character of the institution for which the
money is proposed to be raised. By an act of the congress of
the United States, U. S. St. of 1862, *c.* 130, there was granted
to each state of the Union an amount of public land, equal
to thirty thousand acres for each senator and representative

in congress to which such state was then entitled; the proceeds of which land, when sold, were to be invested by each state accepting the grant in a perpetual fund, the interest of which was to be inviolably appropriated to the endowment, support and maintenance of at least one college, the leading object of which should be to teach such branches of learning as are related to agriculture and the mechanic arts. Among other conditions appended to this grant were provisions that each state should within five years provide a college such as is above described, and that no part of said fund or the interest thereon should be applied either directly or indirectly to the purchase, erection, preservation or repair of any building. The grant thus made was accepted by the state by *St.* 1863, *c.* 166, and, by a subsequent act in the same year, *St.* 1863, *c.* 220, a corporation was established under the name of the Trustees of the Massachusetts Agricultural College, with power to establish and conduct a college for the purposes contemplated by the act of congress. To these trustees was given authority to determine the location of the college in some suitable place within the limits of the state, and to purchase or obtain, by gift, grant or otherwise in connection therewith, a tract of land of at least one hundred acres, to be used as an experimental farm or otherwise, so as best to promote the objects of the institution. For the purchase of said site or farm, one tenth part of all the moneys which might be received from the sale of the land scrip under the above mentioned act of congress was appropriated, on the condition, however, that the college should first receive by valid subscriptions or otherwise the further sum of seventy-five thousand dollars for the purpose of erecting suitable buildings thereon; and upon the organization, location and establishment of said college in the manner specified, it was provided that two thirds of the annual interest or income which might be received from the fund created under and by virtue of said act of congress and the statutes of the Commonwealth accepting the same, should be appropriated and paid to its treasurer. In pursuance of these enactments, the trustees proceeded to establish said college in the town of Amherst, and purchased a tract

of land there situated for the site of the buildings and for the farm to be connected therewith.

This brief statement of the history of the origin of said college, and of the purposes for which it was designed, makes it apparent that, in accepting the grant or gift of the share or proportion of the public lands appropriated by the act of congress to this commonwealth, the legislature not only acted strictly within its constitutional authority, but also in accordance with the duty enjoined upon it by an express provision of the constitution, *c.* 5, § 2, by which it is ordained that it shall be " the duty of legislatures in all future periods of the Commonwealth to cherish the interests of literature and the sciences, and all seminaries of them," and to encourage " public institutions for the promotion of agriculture, arts, sciences," &c. But the acceptance of the gift or grant for a public purpose of this nature, especially with the conditions attached to it by the act of congress, involved the assumption by the state of certain duties and burdens which it was bound to perform and discharge. The gift was not an absolute one. It was upon certain trusts expressly set forth and declared, to the execution of which the state became solemnly pledged. No part of the funds derived from the sale of lands granted by the United States could be expended in the erection of buildings, and only a small portion thereof in the purchase of land. But expenditures of money to a large amount for these purposes were essential to the creation and establishment of the college which the Commonwealth was by the act of congress bound to provide within five years from the date of the acceptance of the grant of land. This, therefore, was a public burden or duty which the Commonwealth had taken upon itself, and was bound to discharge, in order that it might faithfully execute the trusts which it had assumed, and thereby enable the people of the state to enjoy the benefits which were expected to flow from the bounty of the national government.

There can be no doubt that, as a general rule, where an expenditure is to be made for a public object, the execution of which will be substantially beneficial to every portion f th

Commonwealth alike, and in the benefits and advantages **of** which all the people will equally participate, if the money is **to** be raised by taxation, the assessment would be deemed to come within that class which was laid to defray one of the general charges of government, and ought therefore to be imposed as nearly as possible with equality upon all persons resident and estates lying within the Commonwealth. *Oliver* v. *Washington Mills*, 11 Allen, 268. *Dorgan* v. *Boston, ante,* 223. An assessment for such a purpose, if laid in any other manner, could not in any just or proper sense be regarded as " proportional," within the meaning of the constitution. Take, for example, money raised for educational purposes generally, and to support the system of public schools designed for the instruction of all the children and youth throughout the Commonwealth. This properly constitutes a general public charge imposed for an object in which the whole community has an equal interest, and in the benefits and advantages of which no one class or section has a greater share or proportion than every other. It should therefore be borne, as it always has been in this commonwealth, by a proportionate and equal assessment laid on all persons and estates subject to taxation. This may be done either by a general tax or by requiring that each town should support the public schools within its limits, which is substantially equivalent to a general tax imposed for the same purpose. It may at first sight seem as if the establishment of a college and its endowment and support by the Commonwealth for the education of all persons within the state who might wish to receive instruction in certain branches of science or art would stand on the same footing as the public schools, and that money raised for such an object ought to be apportioned and distributed in such manner as to bear on all persons and property equally, without a resort to local taxation, which would operate partially, and in a certain sense disproportionately. We are not prepared to say that this proposition is in all respects incorrect. We doubt very much whether it would be competent for the legislature to impose the whole burden of supporting such an institution upon any particular municipality, section or district of the state. But we are clear in the opinion

that there may exist a state of facts which would render it jus'
and expedient, and strictly within the exercise of constitutiona,
authority, for the legislature to enact that a portion of such a
public burden should be borne by persons and estates situated
within certain limits, and to authorize a special assessment on
them for that purpose.   If the establishment of a public institu-
tion of general utility or necessity in a particular locality would
be productive of direct and appreciable benefit to persons or
estates in the vicinity, either by increasing the value of property
there situated, or by the opportunities which it would afford to
those residing in the neighborhood to enjoy certain common ad-
vantages and privileges with greater facility and at a less cost
than others having an equal right to participate in them, but
who reside or own estates more remotely situated or in distant
parts of the state, we can see no reason why these special ad-
vantages or benefits should not be taken into consideration in
determining the mode in which the public burden of defraying
the cost of the institution should be apportioned and distributed.
While perfect equality in the raising of money for public charges
is unattainable, it would certainly approximate more nearly to
an equitable apportionment of them to provide that such por-
tion of the expenditure for a public object as will inure directly
to the benefit or profit of a certain town or district should be
borne by the estates situated and persons resident therein, leaving
only that sum to be treated as a public charge, and to constitute
a general assessment on all persons and property in the Com-
monwealth, which may reasonably be supposed to be expended
for the equal and common benefit of all.   Such a distribution
of a public burden would be reasonable because it would tend
to equality ; it would be proportional because it would be borne
in proportion to the benefits which each would receive.

In this view, it seems to us that the statute by which the leg-
islature empowered the town of Amherst to assess on its inhab-
itants a tax of fifty thousand dollars, to raise money to be paid
to the Massachusetts Agricultural College, was legal and valid,
and within the scope of constitutional authority conferred on the
legislative department of the government.   In the fulfilment of

the trust which the Commonwealth has assumed under the act of congress, the duty was devolved on the legislature of selecting a site for the college within the limits of some town or city, of purchasing therein the requisite land for an experimental farm, and of erecting thereon suitable buildings for the convenient conduct and management of the operations of the institution. It might reasonably have been supposed by the legislature that the permanent establishment of the college in a particular locality would be productive of important and valuable advantages to persons and estates in the vicinity. Indeed, it appears from the averments in the petition that large sums of money had been subscribed towards the expense of purchasing land and erecting buildings for the college, the payment of which was made conditional on the establishment of it within the limits of other towns in the Commonwealth, as well as of the town of Amherst. This was positive and direct evidence that its location was deemed to be a matter of local advantage and benefit which the legislature could not well disregard in seeking to make the public charge operate with equality on all citizens and parts of the Commonwealth, and to cause the burden to bear a more exact proportion to the benefits which would be likely to accrue from the expenditure. But to guard against all danger of mistake, and to obtain the highest evidence from those most interested that the imposition of the tax was not unequal or disproportionate to the expected benefits, the legislature required that it should not be laid on the inhabitants of the town, unless two thirds of the voters, at a meeting to be called for the purpose, should assent to its imposition. We do not mean to say that the usual presumption in favor of the validity of an act of the legislature would not have been sufficient to warrant us in assuming, in the absence of anything in the subject matter or in the facts before us to lead to an opposite conclusion, that there were special benefits and advantages likely to accrue to the town of Amherst and its inhabitants from the location of the college within its limits to counterbalance the additional burden of taxation which the act imposed. But in view of the averments of the petition and of the condition upon which the tax

was to be laid, no resort to such presumption in favor of the validity of the action of the legislature is necessary.

The argument urged in behalf of the petitioners seems to us to be based on incorrect premises. The proposition is not strictly true that the money to be raised by the tax is to be paid to a corporate body to be applied for purposes in which the town has no especial interest. A more accurate statement would be, that the money is to be raised to defray a portion of a public charge in fulfilment of a trust which the Commonwealth has rightfully assumed, and in which all the people of the Commonwealth have an interest, and that a proportional assessment of this common public charge requires that a greater share of the burden should be borne by persons and estates within a particular town than by those situated and being without its limits. Nor can it be justly said that because the benefit or advantage which may be derived from the location of the college will inure to individuals by increasing the value of their property or by otherwise promoting their interests, the money is to be raised for a private and not a public service or use. The tax is not imposed for the benefit of individuals, or to raise the value of private property in the town, but in order that a great public institution may be established and maintained. This is the real and primary object. But inasmuch as public charges must be borne by individuals, by means of assessments proportionally and reasonably assessed, a tax may be apportioned among them according to the special benefits which they may receive from the execution of a public work, without in any degree affecting the nature or character of the object for which the money is to be raised. It is on this principle that all taxes are assessed for the making of roads and bridges, for the building of drains and other works of a similar character, for the construction of which assessments are always graduated and imposed, in whole or in part, according to the benefits which may accrue to individuals by the execution of the work.

We do not think it necessary to dwell on the objection that the effect of raising money by the proposed tax under the authority of the act in question will be to release and discharge

certain persons from the payment of sums of money which they
have subscribed for the use and benefit of the college. Inas-
much as the tax is imposed for a legitimate object of public
expenditure, its validity is not affected by the fact that the
money when raised will be appropriated to the reimbursement
of individuals who have previously contributed money for the
purpose of accomplishing the same object. *Freeland* v. *Hastings*,
10 Allen, 570. This doctrine is especially applicable to a case
like the present, where the private subscriptions were made on
the express condition that if paid they should be reimbursed by
the town whenever it was legally empowered to raise the requi-
site sum for the benefit of the college.

But it is urged in behalf of the petitioners that although the
tax in question may not be open to the objection that it is dis-
proportional and unreasonable, it is nevertheless in violation of
another clause in the constitution, Amendments, art. 18, which
provides that " all moneys raised by taxation in the towns and
cities for the support of public schools, and all moneys which
may be appropriated by the state for the support of common
schools, shall be applied to, and expended on, no other schools
than those which are conducted according to law, under the or-
der and superintendence of the authorities of the town or city in
which the money is to expended ; and such moneys shall never be
appropriated to any religious sect for the maintenance exclusively
of its own school." The short and decisive answer to this propo-
sition is, that this amendment does not include or apply to an
appropriation of money for an object such as is contemplated by
the statute in question. The object of the provision is to regulate
the expenditure of money raised by towns or cities for general
educational purposes, and to confine it strictly to the support of
the common or public schools, which every town is required to
maintain under the general laws establishing a uniform system
of education for children and youth throughout the state, and
also to restrain the raising of money by taxation for the support
of schools of a religious and sectarian character. The phrases
" public schools" and " common schools" have acquired under the
legislation and practice of this state a well settled signification.

They are never applied to the higher seminaries of learning, such as incorporated academies and colleges. These, in a certain broad and comprehensive sense, are public institutions, because they are controlled by corporations and are usually open to all persons who are willing to comply with the terms of admission and tuition. But the broad line of distinction between these and the " public or common schools " is, that the latter are supported by general taxation, that they are open to all free of expense, and that they are under the immediate control and superintendence of agents appointed by the voters of each town and city. That the amendment was intended to apply only to these schools is manifest, not only from the terms in which it is expressed, but also from the history of its origin and adoption as part of the organic law. The proposition for incorporating a provision of this nature into the constitution of the Commonwealth was first made in the convention held in the year 1853 for the revision and amendment of the constitution, and a clause in the precise phraseology of the amendment as it now stands was adopted by that convention and submitted to the people of the state for ratification as part of the constitution under the designation of " Proposition No. 6." 3 Debates in Mass. Con. 752. The proposition was however rejected by the popular vote, by a majority of only about four hundred. Subsequently the same proposition for amendment of the constitution was adopted by the legislatures of the years 1854 and 1855, and, having been ratified by the people in May 1855, it became incorporated into the constitution as the 18th article of amendment. On recurring to the debates in the convention respecting the proposed amendment, it will be found that it was there understood and adopted as applicable only to the schools supported by taxation in the several towns and cities, and under their charge and superintendence forming the general system of education for the children and youth of the Commonwealth, and was not intended to apply to or include incorporated academies or colleges. 1 Debates in Mass. Con. 359. 2 Ib. 543–550. 3 Ib. 472, 613, 626. Its subsequent speedy adoption by the legislature and people of the state as part of the constitution leaves

no reason to doubt that its effect and operation were intended to be the same as were had in view by those who originally proposed it.    But, aside from this, we should be slow to come to the conclusion that the amendment was designed to take from the legislature the power which had always been exercised from the earliest periods of our history, of making grants of land and money to incorporated academies and colleges. Certainly it would require clear and explicit language to lead our minds to such a conclusion.    The amendment has full scope and operation, to the extent of the fair interpretation of its terms, without extending its meaning by a forced or doubtful construction.                          *Petition dismissed.*