REGENTS OF UNIVERSITY V. BOARD OF EDUCATION.

No. 122.   Opinion Filed April 14, 1908.

(95 Pac. 429.)

1.  **COLLEGES AND UNIVERSITIES—Constitutional Law—Government of State University—"Public Schools."** The term "public schools," as used in section 5, art. 13, of the Constitution of Oklahoma, does not include in its meaning the University of Oklahoma.

2.  **SAME.** Said section 5, art. 13, of the Constitution, providing that the supervision of instruction in the public schools shall be vested in a board of education, does not vest the Board of Education of the State of Oklahoma with supervision of the University of Oklahoma.

3.  **SAME.** There is no repugnancy between section 5, art. 13, of the Constitution, and article 17, c. 77, of Wilson's Revised and Annotated Statutes of Oklahoma for 1903 entitled "An act to establish and locate the University of Oklahoma."

4   **SAME.** Article 17, c. 77, Wilson's Rev. & Ann. St. Okla. 1903, is not locally inapplicable, and was, by section 2 of the Schedule to the Constitution, extended to and put in force in the state of Oklahoma until it expires by its own limitation or is altered or repealed by law.

(Syllabus by the Court.)

Petition by the Regents of the University of Oklahoma for a writ of prohibition against the Board of Education. Application denied.

*Ledbetter & Moore,* for plaintiff.

*Geo. A. Henshaw,* for defendant.

KANE, J.   This is an original proceeding by petition for a writ of prohibition, instituted by the Regents of the University of Oklahoma against the Board of Education of the State of Oklahoma, prohibiting said Board of Education from exercising any of the powers and duties imposed on the Regents of the University

of Oklahoma by the Constitution and laws of the state, and from interfering with the government and control of the University of Oklahoma, and from exercising any control over said University, or any department thereof, or any of the funds or instrumentalities thereof. And said plaintiff further prays for all such further and additional relief or orders and decrees as will fully and completely protect the plaintiff herein in the enjoyment of all the powers and duties conferred on it by law, and prohibiting the defendant from usurping any of such powers and duties. .

The contention of the Regents is that among the laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which were extended to and remained in force in said state, are the provisions of article 17, c. 77, of Wilson's Revised and Annotated Statutes of Oklahoma for 1903. That it is provided by said article 17, c. 77, *supra*, that the government of the University of Oklahoma should vest in a Board of Regents, and that the plaintiff herein is the Regents of the University of Oklahoma, created by and referred to in said article and chapter of the Oklahoma Statutes, and that all of the provisions of said article and chapter are now the law of the state of Oklahoma, and no part of the provisions in said article and chapter are repugnant to any provisions of the Constitution of the state of Oklahoma, nor are any of the provisions in said article and chapter locally inapplicable. That the Regents of the University of Oklahoma, as a body corporate, by the statutes aforesaid, are authorized to exercise all the powers necessary or convenient for the proper care and maintenance of said University, and to have the custody of all books, records, buildings, and all the other property of the University. That it is further provided by said statutes that the plaintiff herein, the Regents of the University of Oklahoma, shall have the authority to elect a president and secretary of the Board of Regents, charged with the performance of such duties as may be prescribed by the Regents and that such secretary shall be superintendent of buildings and grounds

of the University, and that the Regents shall have authority to enact laws for the government of the University, and of all its branches, and to elect a president, and the requisite number of professors, officers, and employes, and to fix the salary and the term of office of each of them, and to determine the moral and educational qualifications of the applicants for admission to the various courses of instruction of said University. That the Regents are authorized to prescribe rules and regulations for the maintenance and control of the libraries, cabinets, museums, laboratories, and other property of the University, and of the several departments thereof, and for the care and preservation of the same, and to expend such portions of the University fund, as they deem expedient for the erection of suitable buildings and the purchase of appropriate cabinets and additions thereto. That the Regents are further authorized and empowered to draw warrants upon any University fund in the hands of the Treasurer of this state, and it is made the duty of the Treasurer of the state of Oklahoma to pay such funds on warrants drawn by the Regents, and all warrants drawn on the University fund shall be signed by the president of the Board of Regents. And the Regents are authorized and empowered to receive all grants, additions, bequests of money, or other property for the use and benefit of said University. It is alleged further that they are authorized and empowered to appoint a superintendent of buildings of said University other than the secretary of said board, and he shall have personal control and supervision, under the direction of the Regents, of all contracts for the construction of buildings at said University. Then follows an allegation to the effect that the Regents, unless prevented by the wrongful acts and usurpations of the defendant, the Board of Education, and the members thereof, will continue to perform all the duties and exercise all the powers conferred on them by the provisions of article 17, c. 77, *supra*. They further allege that the defendant, the Board of Education, and the members thereof, acting upon advice of the Honorable Charles West,

Attorney General of the state of Oklahoma, has usurped and assumed to exercise an important function, power, and duty of the plaintiff herein. After setting out in detail the acts and usurpations complained of, it is further alleged that unless prohibited by this honorable court the defendant herein will usurp and assume to exercise the powers and duties belonging to the Regents as prescribed by article 17, c. 77, *supra,* and wrongfully and unlawfully prevent them from exercising and performing the duties conferred on them by the provisions of said article 17 of chapter 77.

Upon filing the petition a citation to show cause was served upon the defendant, the Board of Education, who thereupon filed its answer, wherein it admits that the defendant is the Board of Education of the State of Oklahoma, and that the plaintiff is the duly organized Regents of the University of Oklahoma, a body corporate. It further admits that it was advised by the Honorable Charles West, Attorney General, that it had the power by virtue of section 5, art. 13, of the Constitution, to exercise such reasonable supervision over the public schools of the state of Oklahoma as may in the judgment of the board be to the best interest of the public. That section 5, art. 13, *supra,* provides, that:

"The supervision of instruction in the public schools shall be vested in a Board of Education, whose powers and duties shall be prescribed by law. The Superintendent of Public Instruction shall be president of the board. Until otherwise provided by law, the Governor, Secretary of State, and Attorney General shall be *ex-officio* members, and with the superintendent, compose said Board of Education."

The defendant further alleges in its answer that in its opinion the above section of the Constitution requires the Board of Education to exercise such reasonable supervision of the public schools of the state of Oklahoma as may be in its judgment for the best interest of the public. That the words "public schools" mean all public schools that are entirely maintained by public funds. That said board was so advised as above set forth by the Attorney General. The defendant alleges that it has not attempted to exer

cise further supervision or control of the University of Oklahoma, of which the plaintiff complains, other than to elect a president thereto. That by electing said president it has exercised a reasonable supervision and control as provided by said Constitution. The defendant then prays that the court may construe the clause, "supervision of instruction of the public schools," and designate what is meant by "public schools," and what is a reasonable supervision to be exercised by the Board of Education created by the Constitution, to the end that the petition of plaintiff may be dismissed and the defendant properly instructed, by the exercise of the supervisory control given the Supreme Court by the Constitution over all inferior courts, commissions, and boards of the state of Oklahoma.

It is obvious from the above excerpts from the pleadings that the Board of Education concedes that article 17, c. 77, Wilson's Rev. & Ann. St. Okla. 1903, would confer all the power upon the Regents of the University that they claim it does, if it were not for its alleged repugnancy to section 5, art. 13, of the Constituton. It will therefore be necessary to apply the established rules of statutory interpretation to these two laws in order to determine if article 17, c. 77, Wilson's Rev. & Ann. St. Okla. 1903, is regugnant to the constitutional provisions above quoted, or so locally inapplicable that it was not extended to and put in force in the state of Oklahoma by section 2 of the Schedule. Section 2 of the Schedule to the Constitution provides that:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

There is no contention, nor is there room for any, that article 17, c. 77, *supra,* is locally inapplicable, so if it is not in force in the state of Oklahoma it must be by reason of its repug-

nancy to section 5, art. 13, of the Constitution. As is well said by learned counsel for plaintiff in their brief:

"The first paragraph of this section, that 'the supervision of instruction in the public schools shall be vested in a Board of Education whose powers and duties shall be prescribed by law,' makes it doubtful whether this board, in advance of legislation, possesses any power whatever. It is a new board, having no existence under the territorial statutes. Its name, and the fact that it is given supervision of instruction in the 'public schools,' may raise the presumption that it succeeds to the powers of the old Board of Education, but clearly no other powers are conferred upon it. If this is true, then there is no repugnancy between article 17, c. 77, of the Oklahoma Statutes, and section 5, art. 13, of the Constitution. They relate to entirely different subjects, the one to the University, the other to the public or common schools of the state. Every provision of article 17, c. 77, may be executed by the Regents of the University, and the University governed in all of its branches and details without any conflict with any duty of the Board of Education."

But we cannot agree with the learned counsel for the defendant in his contention that the term "public schools," as used in section 5, art. 13, of the Constitution, means all schools that are entirely supported and maintained by public funds, the University of Oklahoma. The term "public schools" has acquired a well-defined, popular signification in Oklahoma as well as elsewhere, and unless it is apparent from the nature and manner of its use, or it otherwise appears that it was intended to have another meaning, the inference is that it was used in its known and defined meaning and sense. The Century Digest, we think, gives the well-known, popular meaning of the term. It says: "Public schools, in the United States, means the same as common schools."

In the case of *Elsberry v. Seay*, 83 Ala. 614, 3 South, 804, Mr. Justice Clopton gives the term the same meaning where it is used in the Alabama Constitution under somewhat the same circumstances as it is used in Oklahoma's Constitution. Section 1 of article 13 of the Alabama Constitution for 1875 provides that:

"The General Assembly shall establish, organize and main-

tain a system of public schools throughout the state, for the equal benefit of the children thereof, between the ages of seven and twenty-one years; but separate schools shall be provided for the children of citizens of African descent."

Under the above constitutional provision the General Assembly of the state sought to establish the Alabama University for Colored People and provide for its support and government. The question was raised that the act of the General Assembly was in conflict with section 1 of article 13 of the Constitution, *supra*, and therefore void. Mr. Justice Clopton in the Alabama case, *supra*, discussing this feature of the case, says:

"The primary object of inquiry is the meaning and intent of the framers of the Constitution, and of the people in adopting it, as manifested by the terms employed, when considered in connection with the prior and existing state of things. When words and phrases are employed which have acquired a defined popular signification, the manifest inference is that they are used in their known and defined meaning and sense, no intention being apparent, from the nature and manner of use or otherwise, to attach any other signification."

After a discussion of the Alabama public school system, Mr. Justice Clopton further says:

"Controlled by the conservative principle that the diffusion of knowledge, at least elementary, is essential to the preservation of free government, and, as conclusive to this end, the extension of the opportunities and advantages of education through the various parts of the state, the convention declared and incorporated in the organic law that a system of public schools shall be established, organized, and maintained; but, for the first time in the state Constitution, specially designated its character, extent, and purposes. The constitutional system of common schools must extend throughout the state, and must afford equal benefit to all 'the children thereof, within the specified years. The General Assembly is without authority to establish a system of common schools which does not possess, in its entirety, those distinguishing features. It is more than a presumption that the term 'public schools' was employed in the Constitution in its popular meaning and sense, the system of public schools to which the people of the

state had been accustomed, and as they would understand it, in adopting the Constitution."

In the case of *Jenkins v. Andover*, 103 Mass. 94, the decision turned on the definition of the term "public schools" as used in the eighteenth article of the amendment of the Constitution of the state of Massachusetts which is as follows:

"All moneys raised by taxation in the towns and cities for the support of public schools, and all moneys which may be appropriated by the state for the support of common schools, shall be applied to, and expended in, no other schools than those which are conducted according to law, under the order and superintendence of the authorities of the town or city in which the money is to be expended; and such money shall never be appropriated to any religious sect for the maintenance exclusively of its own school."

Another provision of the Constitution provided for the support of "public schools and grammar schools" in towns, etc. Construing the meaning of these terms, the Supreme Court of that state said:

" 'Public schools,' as those words are used in the Constitution and laws of Massachusetts, are not limited to schools of the lowest grade. The addition of 'grammar schools' in the article of the Constitution just quoted is rather by way of specifying one kind of public schools than by way of contradistinction. In the general laws of the commonwealth, for years before the adoption of the eighteenth amendment of the Constitution, the words 'public schools' were used as including all schools, from those lower than grammar schools to those commonly known as high schools, established and maintained in the several cities and towns as part of the general system of popular education. All these are included under the head of 'public schools' in the twenty-third chapter of the Revised Statutes. The words 'public schools' are synonymous with 'common schools' in the broadest sense, as used in this constitutional amendment, and in the statutes concerning the Board of Education and the distributions of the school fund."

That the term is not a local one, having one meaning in one state and another meaning in another, is quite apparent from the popular signification of the term in the widely separated states of

Alabama and Massachusetts. But if any stronger proof of the general popular meaning attached to the term throughout the United States is necessary, it may be found in section 7 of the Oklahoma enabling act, June 16, 1906, c. 3335, 34 Stat. 272, which provides:

"There is hereby appropriated, out of any money in the treasury not otherwise appropriated, the sum of five million dollars for the use and benefit of the common schools of said state in lieu of sections sixteen and thirty-six, and other lands of the Indian Territory. Said appropriation shall be paid by the Treasurer of the United States at such time and to such person or persons as may be authorized by said state to receive the same under laws to be enacted by said state, and until said state shall enact such laws said appropriation shall not be paid, but said state shall be allowed interest thereon at the rate of three per centum per annum, which shall be paid to said state for the use and benefit of its public schools. Said appropriation of five million dollars shall be held and invested by said state, in trust, for the use and benefit of said schools, and the interest thereon shall be used exclusively in the support and maintenance of said schools."

There can be no possible doubt but that the terms "common schools" and "public schools," as used in the above quotation, were intended to have the same signification, and using the terms interchangeably carries no sense of incongruity to the popular mind.

We are willing to agree with the learned Attorney General, in his letter to the Governor, that:

"Oklahoma has reached the highest point of development as compared to any other state, There is a greater school fund, a more elaborate preparation, a larger opportunity, in this state. Free education is offered to all residents of the state, and a child may take its choice after it has completed its course in the graded schools or high school. It may go to the University Preparatory School, or, when it is qualified, to a Normal School, Agricultural College, or the University."

But we do not believe that the term "public schools" has any different popular meaning or signification in this state than it has

in the states of Alabama and Massachusetts or in the Congress of the United States, whose membership is made up from all the states of the Union.

We do not mean to lay down as a rule to which there is no exception that the terms "public schools" and "common schools" are always interchangeable terms. There may be circumstances under which the terms "public schools" might be conceived to include the University or other institutions of higher learning in the state. We believe, however, that the correct rule is the one laid down in the Alabama case, *supra,* that:

"When words and phrases are employed which have acquired a defined popular signification, the manifest inference is that they are used in their known and defined meaning and sense, no intention being apparent, from the nature and manner of use or otherwise, to attach any other signification."

There is nothing apparent from the nature and manner of the use of the term "public schools" as it appears in section 5 of article 13 to indicate that the constitutional convention, or the people when they adopted their Constitution, intended to attach to it any other signification than its well-known, popular one. We are, therefore, irresistibly led, by both reason and authority, to the conclusion that the term "public schools," as used in section 5, art. 13, of the Constitution of Oklahoma, does not include in its meaning the University of Oklahoma; that said section 5, art. 13, of the Constitution, providing that the supervision of instruction in the public schools shall be vested in a Board of Education, does not vest the Board of Education of the State of Oklahoma with supervision of the University of Oklahoma; that there is no repugnancy between section 5, art. 13, of the Constitution, and article 17, c. 77, of Wilson's Rev. & Ann. St. Okla. 1903, entitled "An act to establish and locate the University of Oklahoma"; that article 17, c. 77, Wilson's Rev. & Ann. St. Okla. 1903, is not locally inapplicable, and was, by section 2 of the Schedule to the Constitution, extended to and put in force in the state of Okla-

homa until it expires by its own limitation or is altered or repealed by law.

It follows that the plaintiff is entitled to the relief prayed for in its petition, but as the defendant, the Board of Education, by its answer, shows clearly that it intended no usurpation of the functions or duties of the Regents of the University of Oklahoma, and joins with the plaintiff in its prayer to this court for a construction of the law that it may know its duty in the premises, we will not at this time issue the writ of prohibition, nor will we .dismiss the petition, but will take no further action, except upon additional showing by any of the parties in interest.

All the Justices concur.