STATE *ex rel.* PETER KONDOS

*v.*

THE WEST VIRGINIA BOARD OF REGENTS, *etc.*
AND ROLAND H. NELSON, JR., *etc.*

(No. 12929)

Submitted April 28, 1970.                    Decided June 16, 1970.

*Thomas E. Medeiros,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *Joseph E. Hodgson,* Assistant Attorney General, for respondents.

CAPLAN, JUDGE:

Peter Kondos, the petitioner in this original proceeding in mandamus, seeks to compel the respondents, The West Virginia Board of Regents, a corporation created by statute, and Roland H. Nelson, Jr., individually and as President of Marshall University, to reinstate him in his contract with full

pay and allowances "until such time as said respondents act in accordance with the laws of this state."

Upon said petition a rule was granted, returnable April 28, 1970. On that date the case was submitted for decision upon the petition, together with its exhibits, the demurrer to the petition and upon briefs and arguments filed and made by counsel for the respective parties.

By a "Notice of Appointment" dated April 14, 1969, designated Relator's Exhibit No. 1, Peter Kondos was notified of his appointment as assistant football coach at Marshall University for a period of twelve months, beginning July 1, 1969, at a salary of $10,440.00. This notice was from the West Virginia Board of Education and was signed by Roland H. Nelson, Jr., President of Marshall University. It was therein stated that acceptance will constitute a contract. Presumably, Kondos accepted.

By letter dated August 1, 1969, respondent Nelson notified the petitioner that "the Athletic Committee and the University Council have recommended that I take steps which would lead to your dismissal." The letter continued, "I am recommending to the Board of Regents that your contract for the academic year 1969-70 be terminated as of September 30, 1969. This recommendation is based on the judgment that you have performed your duties as Assistant Football Coach in an incompetent manner." Specific violations were then enumerated. He was therein informed that he could appeal this action to a faculty committee appointed by the chairman of the University Council and, if he desired, he could appeal the action of the said faculty committee to the Board of Regents. Alleging in effect that an appeal to a faculty committee, subordinate to respondent Nelson, would be a useless act, the petitioner waived such hearing.

Thereafter, by letter dated August 28, 1969, signed by respondent Nelson, Mr. Kondos was notified that his contract with the West Virginia Board of Regents, successor to the West Virginia Board of Education, was terminated, effective September 30, 1969. Again, the violations allegedly committed

by the petitioner were listed. The petitioner sought an appeal from this dismissal to the Board of Regents and on February 4, 1970 was notified by that body that it had confirmed the action of Dr. Nelson and had dismissed his appeal. It is by reason of this action that the petitioner seeks this writ of mandamus.

The petitioner relies on the provisions of Code, 1931, 18A-2-8, as amended, contending that he has been denied due process of law. He reasons that the termination of his contract and dismissal without being afforded a hearing as provided in the aforesaid Code section constitutes such violation of his rights.

As indicated in the demurrer filed by the respondents, they take the position that Peter Kondos was serving at the will and pleasure of the Board of ·Regents and was not legally entitled to a hearing prior to his dismissal from employment. Also, say the respondents, the petitioner was accorded an opportunity to be heard, which he waived.

The sole question presented for decision is whether, under the applicable statutes, the petitioner, prior to his dismissal, was entitled to a hearing before the Board of Regents.

Code, 1931, 18A-2-8, as amended, entitled "Suspension and dismissal of school personnel by board," provides:

> "Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, but the charges shall be stated in writing and the employee so affected shall be given an opportunity to be heard by the board upon not less than ten days' written notice, which charges and notice shall be served upon the employee within five days of the presentation of the charges to the board. The hearing may be held at the next regular meeting of the board or at a special meeting called for that purpose; and in any case when the board is not unanimous in its decision to suspend or dismiss, the person so suspended or dismissed shall have the right of appeal to the state superintendent of schools."

The title of Chapter 18A, enacted in 1969, is "School Personnel." Under Code, 1931, 18A-1-1, as amended, "School personnel" is defined as "all personnel employed by a county board of education." Other definitions in our statutes relating to education are pertinent. Code, 1931, 18-1-1, as amended, defines "State board" as the "West Virginia board of education" and "Board" as "the county board of education." Code, 1931, 18A-1-1, as amended, provides: "The definitions contained in section one [18-1-1], article one of chapter eighteen shall be applicable to this chapter." These definitions demonstrate beyond doubt that the word "board", as used in Code, 1931, 18A-2-8, as amended, refers to a county board of education rather than the West Virginia Board of Education, the predecessor of the West Virginia Board of Regents. Consequently, any provision for a hearing prior to the suspension or dismissal of any person in the board's employment relates only to the personnel employed by a county board of education.

The petitioner further relies on the definitions of "School" and "Teacher" as set out in Code, 1931, 18-1-1(a) and 1(g), as amended. "School" is therein defined to "mean the pupils and teacher or teachers assembled in one or more buildings, organized as a unit." "Teacher" is defined in section 1(g) as a "teacher, supervisor, principal, superintendent, public school librarian or any other person regularly employed for instructional purposes in a public school in this State."

As contended by the respondents, the term "public school" is nowhere defined in our statutes. However, it has been generally held that such term relates to schools established and maintained at public expense, embracing elementary and secondary schools normally supported by county or local authorities and does not include colleges and universities. See *Rankin v. Love*, 125 Mont. 184, 232 P.2d 998; *In re Opinion of the Justices*, 214 Mass. 599, 102 N.E. 464; *Merrick v. Inhabitants of Amherst*, 94 Mass. (12 Allen) 500; *In re Townsend*, 195 N.Y. 214, 88 N.E. 41; *Normal School District No. 3 v. Painter*, 102 Mo. 464, 14 S.W. 938; *Regents of University of Oklahoma v. Board of Education*, 20 Okla. 809, 95 P. 429.

By the enactment of Article 26, an addition to Chapter 18 of the official Code of West Virginia, the Legislature, at its regular 1969 session, established the West Virginia Board of Regents. This is a state agency which has the general determination, control, supervision and management of the financial, business and educational policies and affairs of all state colleges and universities. Section 12 of the aforesaid article provides: "All powers, duties and authorities which the West Virginia board of education may have had with respect to state colleges and universities immediately prior to the effective date of this article [July 1, 1969], are hereby transferred from the West Virginia board of education to the West Virginia board of regents; * * *." Nowhere in said Article 26 is there any provision relating to tenure of faculty and college personnel or to the manner in which they are to be suspended or discharged. Nowhere in the article relating to the West Virginia Board of Education do such provisions exist.

In view of the applicable statutes we are of the opinion that it was not obligatory upon the respondents to grant the petitioner a hearing prior to his dismissal. Therefore, no clear legal right to the relief requested having been shown, the writ of mandamus is denied.

*Writ denied.*