THE STATE OF KANSAS, *on the relation of John T. Little, Attorney General*, v. THE REGENTS OF THE UNIVERSITY OF KANSAS *et al.**

1. UNIVERSITY—*Board of Regents—Quo Warranto.* An action in the nature of *quo warranto* may be maintained in the name of the state by the attorney general to oust the board of regents of the university of Kansas from the exercise of corporate powers in excess of those conferred on it by law. The board of regents is such a corporation as is subject to the control of this court in such an action.

2. LIBRARY—*no Fee for Use.* Admission into the university is made free by statute, and the board of regents has no power to collect a fee of $5, or any other fee for the use of the library, or to exclude students from the use of the library for the nonpayment of such fee.

3. ——— *Wrongful Exclusion of Students.* The assumption by the board of the power to collect such fees, and to exclude

* NOTE.—See this case annotated in 29 L. R. A. 378 *et seq.*

students from the library for the nonpayment thereof, is an unwarranted assumption of corporate powers, from the exercise of which they will be ousted by this court in a suit brought in the name of the state by the attorney general.

### Original Proceeding in Quo Warranto.

THE opinion herein, filed June 8, 1895, states the nature of the action and the facts.

*John T. Little*, attorney general, for The State ; *Morton & Clark*, of counsel :

At the time of serving and filing this brief, no issue had been made up in this cause. We labor, therefore, under the disadvantage of resorting to conjecture as. to the defense to be made. If it turns out to be one based upon the form of the action, or that the principal defendants are not legally possessed of corporate powers, we claim that the acts of the legislature, among which are those of 1864 and 1889, are constitutional and effective for the latter purpose, and refer to Dill. Mun. Corp., § 22 ; *Beach v. Leahy*, 11 Kas. 28 ; *Knowles v. Board of Education*, 33 id. 692 ; and as to the form of the action to Civil Code, § 653, 4th clause ; *The State, ex rel., v. City of Topeka*, 31 Kas. 454. The phrase "any corporation" is inclusive of a *quasi* corporation, as well as a corporation *proper*, and of a *public* corporation as well as a private one. The greater includes the less.

*D. M. Valentine*, for defendant :

The supreme court has original jurisdiction in *quo warranto* only as it obtains the same from the state constitution (art. 3, § 3) ; and this jurisdiction is of course only such as was understood and settled to be *quo warranto* jurisdiction prior to or at the time when the constitution was adopted. And this jurisdiction

after being conferred upon the supreme court cannot grow or extend itself so as to include other matters; nor can the supreme court itself by any power it may possess extend such jurisdiction; nor can even the legislature do so. *The State v. Wilson,* 30 Kas. 661; *The State v. Allen,* 5 id. 213.

*Quo warranto* cannot be maintained against any body of men simply because they are a body of men, as a copartnership, etc., although it may have usurped powers, nor against an *admittedly* legal officer to enjoin or restrain him from the performance of some act, however illegal it might be, which he believes and claims comes with the proper duties of his office. High, Ex. Rem., §§ 618, 636.

*Quo warranto* has nothing to do with anything except with the illegal existence or illegal acts of regular corporations or assumed regular corporations, or with the illegal holding or attempted illegal holding of an office.

We claim that this action cannot be maintained for the following, among other reasons: First, because the state university is not a corporation; and, second, because even if the university should be considered as a *quasi* corporation, then no such remedy in *quo warranto* as the plaintiff now seeks was ever known or heard of or had any existence when our constitution was adopted.

Now, the state university is not a corporation under or by virtue of any of the provisions of the constitution; nor has it any organization or existence of any kind under or by virtue of any of the provisions of any general law or laws; hence, it is not a corporation at all. Of course, however, it is a legal and valid organization, although it is not a corporation. And this

is true under the very statute referred to by the plaintiff.

The decisions of this court are uniform that counties, townships and school districts are not corporations within the meaning of the constitution. Among the cases, see *Beach v. Leahy*, 11 Kas. 23 ; *The State, ex rel., v. Comm'rs of Pawnee Co.*, 12 id. 439 ; *Comm'rs of Pottawatomie Co. v. O'Sullivan*, 17 id. 58, 61 ; *Eikenberry v. Bazaar Township*, 22 id. 561, 572 ; *The State, ex rel., v. Sanders*, 42 id. 228 ; *Freeland v. Stillman*, 49 id. 197, 207 ; *The State, ex rel., v. Lewelling*, 51 id. 562.

The plaintiff also refers us to the civil code, § 653, subdivision 4, and to the last portion of such subdivision, as authorizing this present action ; but must not the word "corporation" as there used mean the same thing as the same word means in the constitution which gives to the court the only original jurisdiction which it has in *quo warranto?* In the constitution the word means a regular corporation only, and one created by general law only, and not such a supposed or *quasi* corporation as the university of Kansas.

The case of *The State, ex rel., v. City of Topeka*, 31 Kas. 452, referred to by the plaintiff, has no possible application to this case. The city of Topeka was and is a regular corporation under the constitution and at common law, while the state university is not.

We suppose it will not be contended by the plaintiff that the supreme court may rightfully transcend its jurisdiction for the purpose of keeping other organizations or bodies within their respective jurisdictions or spheres, and especially not where there are other available, adequate and appropriate remedies for the supposed wrongs. In addition to the authorities heretofore cited, see the following : *Cleaver v. Com-*

*monwealth*, 34 Pa. St. 283 ; *The State v. Evans*, 3 Ark. 585 ; *People v. Whitcomb*, 55 Ill. 172 ; *Stultz v. The State*, 65 Ind. 492.

Now, *quo warranto* will not lie where there is any other plain and adequate remedy.    *The State, ex rel., v. Wilson*, 30 Kas. 676, and authorities there cited. And certainly there are other plain, adequate and appropriate remedies for the alleged wrongs in this case. But the subject-matter of this action is not of such a public character as to justify any interposition by the attorney general or the state.    The questions to be determined are whether a library fee of $5 may be charged to each student, or whether the use of the library must be free.    Now, who loses the $5 if it is paid by each student?    Is it the state or the student? And who loses the use of the library where the student is deprived of its use?    Is it the state or the student? Certainly it is the student, and not the state, that must bear all these losses.   Hence, the proper action to redress these supposed wrongs must be private, and not public.    That the public cannot sue, see the following cases :   *The State, ex rel., v. McLaughlin*, 15 Kas. 228 ;  *Center Township v. Hunt*, 16 id. 438–440 ;  *City of Atchison v. The State, ex rel.*, 34 id. 379, 389–392 ; *City of Argentine v. The State, ex rel.*, 46 id. 431, 436–438.

Upon the question of the power of the chancellor and board of regents to impose a library fee of $5 upon each student, the plaintiff refers us to § 11 of the act relating to the university.   Gen. Stat. of 1889, ¶ 6380. This section provides, among other things, as follows :

"Admission into the university shall be free to all the inhabitants of the state,    .   .   .    and no person shall be debarred on account of age, race, or sex."

Now, if the university for any reason is a regular

corporation, then the foregoing section is void, for it is only a portion of a special act of the legislature, and under our constitution and the decisions of this court no regular corporation can be affected by a special act. But, as before stated, if the university is not a regular corporation, and it is not, then for the reasons heretofore given this present action will not lie.

The opinion of the court was delivered by

ALLEN, J.: This action is prosecuted in the name of the state on the relation of the attorney general against the regents of the university, the chancellor and treasurer, to oust them from the exercise of the power, which it is alleged they have usurped, of charging the students who are residents of the state an annual library fee of $5 and a graduating fee of $5, and of excluding such students who fail to pay the library fee from the use of the books. It is alleged that the university is a corporation, and that enforcing the payment of such fees by residents of the state is an assumption of unwarranted corporate powers by the regents; that the statute makes admission to the university free to all residents of the state. It is admitted that the regents have been collecting such library fee, and claim the right to do so, and also the right to exclude students who refuse to pay from the use of the library. But it is contended that the exercise of this assumed power cannot be inquired into by an action in the nature of *quo warranto*, for the reason that the state university is not a corporation, or if a corporation in any sense, then only a *quasi* corporation, whose doings cannot be inquired into in an action of this kind. It is contended that the jurisdiction of this court of original proceedings in the nature of *quo warranto* is confined to such cases as were re-

garded as proper ones for the exercise of the jurisdiction of the courts by proceedings in *quo warranto* at the time of the adoption of the constitution ; that the jurisdiction of the court cannot be extended by legislative enactment to cases of a different nature. It is claimed that *quasi* corporations are creatures of the law established for the purposes of government, and while they have some of the attributes of corporations, yet that they are not such corporations as those over the actions of which the courts exercise their supervisory power by actions of this nature. In the fourth subdivision of § 653 of the code, it is provided that this action may be maintained "when any corporation do or admit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or when any corporation abuses its power or exercises powers not conferred by law." In *The State, ex rel., v. City of Topeka*, 31 Kas. 452, it was held, that —

"Whenever a municipal corporation usurps any power which might be conferred upon it by the sovereign power of the state, but which has not been so conferred, such corporation may be ousted from the exercise of such power by a civil action in the nature of *quo warranto* in the supreme court."

In that case judgment was entered ousting the city from the assumed power of raising a revenue from the sale of intoxicating liquors by granting licenses or permits therefor.

Is the university such a corporation as is referred to in the statutory provision above quoted? The present state university is the successor of the Lawrence University of Kansas, incorporated under an act of the territorial legislature, approved January 29, 1861. This act provided for the establishment of a private corporation. Under subsequent legislation

the school was taken in charge by the state, and is now a public institution, established and maintained under the following provision of the constitution (art. 6, § 7):

"Provision shall be made by law for the establishment, at some eligible and central point, of a state university for the promotion of literature and the arts and sciences, including a normal and an agricultural department. All funds arising from the sale or rents of lands granted by the United States to the state for the support of a state university and all other grants, donations or bequests, either by the state or by individuals, for such purpose, shall remain a perpetual fund, to be called the 'university fund,' the interest of which shall be appropriated to the support of the state university."

Article 6 of the constitution treats of the subject of education. In the section quoted, it not only authorizes, but it requires, special legislation for the establishment of a university. The legislation must be special, because but one university is contemplated. It is claimed that § 1 of article 12 of the constitution, which treats of corporations and provides that "the legislature shall pass no special act conferring corporate powers," would render void a special act conferring corporate powers on the university, and that the legislation with reference to the university can only be upheld on the ground that it is a *quasi* corporation, and not a corporation proper. It is conceded by the very learned counsel for the defendant that universities are generally corporations proper, but it is claimed that our state university, while a valid public institution, cannot be a valid corporation because of § 1 of article 12. We think this section has no application to legislation with reference to the university. It is in the article which treats of corpora-

tions in general. The section of the constitution first quoted, however, is in the article treating of the subject of education, and applies specifically to the establishment of a university. It directs the establishment of such an institution, leaving the legislature free in determining as to particulars. It is true that there is no express grant of authority to make it a corporation, but in view of the fact that such institutions are generally corporations, and of the difficulty, if not utter impracticability, of establishing a school authorized to receive donations and to hold extensive properties intended for the use of each succeeding generation without conferring corporate powers, we think it clear that the framers of the constitution meant to and did authorize the establishment of the university as a corporate body. We do not deem it necessary at this time to enter into a consideration of the question whether an action in the nature of *quo warranto* may be maintained against a *quasi* corporation, such as a county, township, or school district, for the purpose of ousting it from the exercise of powers it has unlawfully assumed. Section 6 of chapter 258 of the Laws of 1889 provides that —

"The board of regents shall be a body corporate, under the name of 'The Regents of the University of Kansas,' and as such may sue and be sued, make contracts, and hold and transfer property, both real and personal, for the university. They shall provide a seal with their corporate name, which shall be used to attest all contracts in writing obligating the university."

It is only necessary for us to hold, and we do hold in this case, that this act makes the board of regents such a corporation as will be restrained and held within the bounds of its lawful authority by the exercise of the original jurisdiction of this court in *quo warranto*.

1. University—board of regents—quo warranto.

We are unable to mention another corporation in whose keeping interests are confided which it is more appropriate to protect by the exercise of the powers of the court than those confided to the regents. The education of the youth by the public is, of all the powers exercised by the state, of the most certain and unalloyed benefit to the people. The university crowns the great public-school system.

A further objection is made to the prosecution of this action in the name of the state, on the ground that the imposition of a library fee on students in the university is in the nature of levying a tax; that it affects not the state, but the individual students; that they have an adequate remedy if the tax be unlawful by injunction; and that the attorney general may not use the name of the state merely for the purpose of protecting their private interests. The fee imposed is not a tax within the ordinary meaning of the term. It cannot be collected in the ordinary manner of collecting taxes. It is not expressly provided for by any law of the state. It is at least doubtful whether the students are so united in interest that they could join in an action to restrain the collection of the fee. Whether they could do so or not, however, we are clearly of the opinion that the conduct of the university is a matter of state concern; that the public maintains the institution, not for the special advantages conferred by it on particular individuals, but for the great advantage accruing to the state by reason of the maintenance of a great institution of learning within its borders, and the diffusion of knowledge and advancement of the people in literature and art. All its people gain through the instrumentality of this great institution. It is to attain these public ends that the state lavishes money, raised by taxation, on the

institution. It is because of the interest of the
state in the education of its youth that the uni-
versity was created at all. Having created a uni-
versity, the state is directly concerned in its being
conducted in accordance with the provisions of law.
It is directly concerned in the education of the students.
It is directly concerned when the youth of the state
are, for any unwarranted cause, excluded from it.

2. Library—
no fee
for use.

The legislature has undertaken to open the
way to a higher education to the poorest
of the youth of the state. Whenever the
board of regents places any unwarranted obstacle in
the way of the accomplishment of that end it affects
and opposes the public interest. This disposes of the.
objections to the form of the action.

But little need be said on the merits of the case.
Section 11, chapter 258, of the Laws of 1889, which
was in force at the time the action was brought,
reads : "Admission into the university shall be free
to all the inhabitants of the state, but a sufficient
fee shall be required from non-resident applicants, to
be fixed by the board of regents, and' no person shall
be debarred on account of age, race, or sex." Not-
withstanding the apparently plain provisions of this
section, it is contended that the board of regents may
yet collect a reasonable fee for the wear and tear of
the books ; that the word "free" must be taken with.
qualifications ; that in the nature of things there must
be rules and regulations ; that each and every student
cannot be permitted to occupy the chancellor's seat
at his desk, or any other place in the university he
may choose at his own sweet will, but that the regents
and the chancellor have a right to make proper regula-
tions ; and that the fee imposed is no more than is
reasonable to preserve and protect the library. We

fully agree with so much of the claim of the learned counsel as asserts the right of the regents and the chancellor to make all necessary and proper rules and regulations for the orderly management of the school, the preservation of discipline therein, and the protection of its property; but that it may require the payment of money as a condition precedent to the use of the property of the state is another and a different claim, with which we do not agree. If the regents may collect $5 for the use of the library, why may they not collect also for the use of the rooms of the building and of its furniture? Why may they not impose fees for walking in the campus, or for the payment for instructors? All these things have cost money. There are expenses incurred by the state on behalf of the students in connection with every department of the school. If they may collect for one thing, it is not apparent why they may not collect for another. It is suggested that supplies are furnished in the laboratories for the use of students, which are destroyed; that vessels and implements may be broken, and that the students should certainly be required to pay for these things. No question of that kind, however, is now presented, and express provision therefor is made by chapter 226, Laws of 1895. The library is provided for permanent use. Each volume, with proper care, may be used by a great number of students and for a long term of years. The library as a whole is subjected to wear and tear, but only in the same manner as furniture and other properties furnished by the state. The buildings, furniture, library and apparatus, as well as the services of the faculty, are furnished and paid for by the state. These, we hold, under the provisions of the statute quoted, are free to all residents of the state who are entitled to admission into

<span style="float:left">3. Wrongful exclusion of students.</span> the university. The regents have no power to raise a fund to be managed and disposed of at their discretion, by charging fees for the use of the library, or under any other claim for any other purpose, unless expressly authorized to do so by law.

Judgment of ouster will be entered, in accordance with the prayer of the petition.

All the Justices concurring.