[No. 13209.  Department Two.  March 7, 1916.]

MARK M. LITCHMAN et al., Appellants, v. WILLIAM A.
SHANNON et al., Respondents.[1]

COLLEGES AND UNIVERSITIES — TUITION AT STATE UNIVERSITY—
STATUTES—CONSTITUTIONALITY.  Laws 1915, p. 239, providing an en-
trance and tuition fees to be charged to students of the university
of Washington is a valid exercise of legislative authority; as it is
not forbidden by Const., art. 26, § 4, requiring the establishment of
systems of public schools free from sectarian control and "open to
all children of the state"; art. 9, § 1, requiring ample provision for
the education of all resident children, without distinction or pref-
erence; or art. 9, § 2, providing for a general and uniform system of
public schools, to include common schools and such high schools,
normal schools and technical schools as may hereafter be established.

CONSTITUTIONAL LAW — CLASS LEGISLATION — PRIVILEGES AND IM-
MUNITIES—COLLEGES AND UNIVERSITIES.  Laws 1915, p. 239, providing
an entrance and tuition fees for students at the state university
does not grant to any citizen or class privileges or immunities which
upon the same terms shall not equally belong to all citizens, in vio-
lation of Const., art. 12, § 1, by reason of the fact that students in
the state college of Washington are not charged entrance or tuition
fees.

CONSTITUTIONAL LAW—STATUTES—CONSTITUTIONALITY — PRESUMP-
TIONS.  The presumption is in favor of the constitutionality of acts
of the legislature, and they will not be declared void unless there is
no reasonable doubt about their invalidity.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered October 4, 1915, upon sustaining
a demurrer to the complaint, dismissing an action for an in-
junction.  Affirmed.

Jacob Kalina, Thos. F. Murphine, and Mark M. Litchman,
for appellants.

The Attorney General and Edward W. Allen, Assistant,
for respondents.

[1]Reported in 155 Pac. 783.

HOLCOMB, J.—The legislature of 1915 passed an act entitled:

"An act for the support of the University of Washington and relating to the erection and equipment of two buildings at the university, making appropriation therefor and providing a system of student fees and creating a building fund." Laws of 1915, p. 239.

The act provides that the university shall charge each student an entrance fee of ten dollars, and a tuition fee of ten dollars per semester, or twenty dollars per annum. This money is to be set aside in the state treasury in a fund called the "University of Washington Building Fund," for the purpose of constructing two buildings. Appellants seek a reversal of the judgment of dismissal, which followed their election to stand upon their complaint, to which respondents' demurrer had been sustained. In form the suit was an action for injunction to restrain the authorities of the University of Washington from carrying into effect the provisions of the act heretofore mentioned. The legal proposition involved is the constitutional power of the legislature to require students at the University of Washington to pay matriculation or tuition fees.

Appellants contend that the act in question is in violation of the fourth paragraph of art. 26, constitution of Washington, as follows:

"Provision shall be made for the establishment and maintenance of systems of public schools free from sectarian control, which shall be open to all the children of said state."

And of art. 9, § 1, as follows:

"It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex."

And also, art. 9, § 2, as follows:

"The legislature shall provide for a general and uniform system of public schools. The public school system shall in-

clude common schools, and such high schools, normal schools, and technical schools as may hereafter be established. . . "

They further contend that it is repugnant to art. 1, § 12, constitution:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Appellants allege that they are of such age that they are entitled to enter the university; that they are desirous of doing so; that they are unable to pay the fees; that they are children of wage-earning parents belonging to that class of people one-half of whom earn less than $500 per year; that they have an earning capacity of less than ten dollars per week; that because of their class and condition, the fees provided for by this act are prohibitive to them, and they are therefore unable to attend the university. They further allege that, at another institution of higher education of the state, viz., the State College of Washington, located at Pullman, students are not required to pay any matriculation and tuition fees, and that, therefore, the system of education provided by the legislation in force is not uniform, and that it discriminates in favor of those students attending the State College at Pullman.

The question to be determined is simply and only a question of constitutional and legislative power. We have so frequently held, in substance, as in *State v. Ide*, 35 Wash. 576, 77 Pac. 961, 102 Am. St. 914, 67 L. R. A. 280, that the courts will presume that an act regularly passed by the legislative body of the government is a valid law and will entertain no presumptions against its validity; and when the constitutionality of an act of the legislature is drawn in question the courts will not declare it void unless its invalidity is so apparent as to leave no reasonable doubt upon the subject— that that may be considered as the settled policy of the courts of Washington. Appellants argue that the provision for the

establishment and maintenance of systems of public schools free from sectarian control, which shall be open to all the children of the state, constitutes a limitation upon legislative power, in that any part of the educational system of the state shall be considered a part of the public schools, and that the mandate that they shall be *open* to all the children of the state means that they shall be *free* to all the children of the state. It is perhaps advisable to review briefly the history of the university of Washington, the legislation in regard thereto, and the matter the constitution makers had in view when they adopted the provisions of the constitution relating thereto.

The state university was inaugurated as a territorial university in 1861. On November 4 of that year it was opened for students. The first comprehensive act for its regulation was passed January 24, 1862. Section 12 of that act (Laws 1862, p. 45, § 12), is as follows:

"The fee of admission to the regular university course in the department of literature, science and the arts, shall not exceed ten dollars, but such course or courses of instruction as may be arranged under the provisions of section nine of this act, shall be open without fee, to the citizens of this territory."

The Laws of 1877, page 241, provided an appropriation to pay for forty-five scholarships, free of tuition, at the university, the appointments to be made by the members of the legislature. By act of 1883 (Laws 1883, p. 68), a similar provision was made. In 1886 (Laws 1885-6, p. 149, § 5), it was provided:

"Each member of the legislative assembly of this territory may appoint one person, who may attend the university without payment of any tuition, . . . All persons attending the university as students, outside of the county of King, during each school year, shall have deducted from their tuition the actual cost of their going to and returning from such university to their respective homes."

The act of January 27, 1888 (Laws 1887-8, p. 232), contains like provisions.

The constitution was adopted in 1889, and there is no provision in it that the entrance to or tuition of the university shall be free or otherwise.

Immediately following the adoption of the constitution, in 1890, the legislature provided that the board of regents was authorized to prescribe regulations for the admission of students and prescribe such rates of tuition as it might deem expedient; and further provided that students residing outside the county of King should have deducted from their tuition their traveling fares. In 1893, for the first time apparently (Laws 1893, p. 293, § 6), the legislature provided that,

". . . tuition in the university, except as may be provided by the regents with reference to the arts or to special courses of study, shall be free to all *bona fide* residents of this state."

The legislature of 1897 enacted the same provision. Laws 1897, p. 427, § 183. The legislature of 1909 enacted the same provision. Laws 1909, p. 238, § 2; Rem. & Bal. Code, § 4317. The legislature of 1915, returned to the tuition and entrance fee plan. Laws 1915, p. 239.

It will thus be seen that, when the constitution was framed, its makers had in view the system by which the University of Washington had up to that time been, in part at least, sustained. At times thereafter, the legislative discretion has seen what it considered the wisdom of requiring payment of reasonable entrance and tuition fees by students, while at other times it has dispensed with such charges.

Whatever may be our view as to the wisdom or policy of the present legislation, with which we have no concern, it is purely and simply a question of power. While it may be true (though it is not now necessary to so determine) that, as to the common schools, the fourth paragraph of art. 26 may mean that such schools shall be open and *free* to all the children of the state, we do not believe that it applies to the uni-

versity of the state. Section 2, art. 9, of the constitution, defines what the public school system shall include, viz.: "common schools, and such high schools, normal schools, and technical schools as may hereafter be established." That section of the constitution continues as follows:

"But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools."

The framers of the constitution, had they desired, might in that section have included the university, but did not. Public schools are usually defined as schools established under the laws of the state, usually regulated in matters of detail by the local authorities in the various districts, towns, or counties, and maintained at the public expense by taxation, and open without charge to the children of all the residents of the town or other district. Black, Law Dictionary (2d ed.); *Jenkins v. Andover*, 103 Mass. 94; *Merrick v. Amherst*, 12 Allen 500. A school is "an institution of learning of a lower grade, below a college or a university. A place of primary instruction." Black's Law Dictionary (2d ed.).

In the state of Oklahoma, the constitution was apparently silent as to the university. It contained a provision similar to art. 3, § 22, of our constitution, art. 13, § 5, of the Oklahoma constitution providing:

"The supervision of instruction in the public schools shall be vested in a Board of Education, whose powers and duties shall be prescribed by law. The Superintendent of Public Instruction shall be president of the board. . . ."

After the adoption of the constitution, the board of education sought to exercise jurisdiction over the university of Oklahoma, which had existed prior to the adoption of the constitution under a territorial statute providing for its government by a board of regents. The supreme court of Oklahoma, in *Regents of University v. Board of Education*, 20 Okl. 809, 95 Pac. 429, concluded as follows:

"We are, therefore, irresistibly led, by both reason and authority, to the conclusion that the term 'public schools,' as used in section 5, art. 13, of the Constitution of Oklahoma, does not include in its meaning the University of Oklahoma, . . ."

There is a case cited by appellants, *State ex rel. Little v. Regents*, 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378, as sustaining their contention, but that case determined only the power of the board of regents to charge fees in the absence of statutory authority therefor. Here the statute expressly authorizes the board of regents to charge the fees. In *State ex rel. Priest v. Regents of University*, 54 Wis. 159, 11 N. W. 472, the constitution defined what should constitute the educational system of the state. A further provision required that, in district schools, tuition "shall be free and without charge for all children between the ages of four and twenty years." No restrictions as to fees or charges to be paid by students in academies, normal schools, or the university, or any of the colleges to be connected therewith were imposed by the constitution upon the law-making branch of the government. The supreme court, therefore, in that case, held that the state was left perfectly free and at liberty to regulate, control, or prohibit altogether such fees and charges by legislative enactment. This was based upon the familiar and well-established principle of constitutional law that, "The state legislature may exercise all legislative power not delegated to the general government, nor restricted nor reserved to the people by the state or national constitution."

We, therefore, conclude, upon reason and authority, that the contention of the appellants cannot be sustained. The matter of which they complain was committed solely to the discretion of the legislative body.

Nor is there any merit in their contention of illegal discrimination. It was within the legislative discretion to determine whether there was necessity or justification for the charge of entrance and tuition fees to students desiring to

attend the university while not requiring any such fees of students desiring to attend the State College of Washington at Pullman. Those attending the state college are not attending the state university. It is the universality of the operation of the law on all persons of the state similarly situated with reference to the subject-matter that determines its validity as a general and uniform law. *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938.

While we may, and do, greatly sympathize with the laudable and alleged desire of the appellants to obtain a higher education at the university, and with their lack of means and inability, as stated in their complaint, to comply with the law as it now exists, we are powerless. Their arguments, cogent as they are, should be addressed to the legislature and not to the courts.

Judgment affirmed.

MORRIS, C. J., MOUNT, BAUSMAN, and PARKER, JJ., concur.