Gary CARDIFF, Russell Johnson, Alice Higgins, Cheryll McDowall, Jon Nelson, Plaintiffs and Appellees,

v.

BISMARCK PUBLIC SCHOOL DISTRICT, Defendant and Appellant.

Civ. No. 9388.

Supreme Court of North Dakota.

Feb. 16, 1978.

As Corrected March 2, 1978.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for defendant and appellant; argued by Robert O. Welfald and Rick D. Johnson, Bismarck.

Fintan L. Dooley, Bismarck, and Stephen L. Pevar, Denver, Colo., for plaintiffs and appellees.

SAND, Justice.

The Bismarck Public School District appealed from an adverse summary judgment issued by the Burleigh County district court.

Gary Cardiff and other parents of school children attending elementary schools in the Bismarck Public School District brought an action in Burleigh County district court challenging the authority of the school district to charge rental fees for the use of necessary school textbooks.

The State of North Dakota initially was also a party defendant but was dismissed from the lawsuit by stipulation of all parties, which was approved by the court.

Both parties moved for summary judgment. The court issued its judgment decreeing that §§ 15–43–07, 15–43–08, 15–43–09, 15–43–10, and 15–43–12, North Dakota Century Code, were in conflict with § 148 of the North Dakota Constitution and were invalid. The judgment also enjoined the school district from charging textbook rental fees or any monetary sum for textbooks, other than reasonable charges for their abuse or destruction. The judgment al-

lowed costs in the total amount of $40.00 in favor of the parents. Cardiff and other parents, after judgment sought attorney fees by motion, which was denied by the court on 3 August 1977. The Bismarck Public School District appealed from the judgment and Cardiff and other parents appealed from the order denying attorney fees.

The basic issue for our resolution is whether or not § 148 of the North Dakota Constitution provides for free textbooks and prohibits the Legislature from authorizing school districts to charge for textbooks. The parents contend the constitutional provision prohibits charging for textbooks, and the school district contends it merely prohibits charging tuition.

The secondary issue is whether or not the plaintiffs and appellees, Cardiff and other parents, are entitled to an allowance of attorney fees.

To resolve the first issue we must examine and construe the provisions of § 148 of the North Dakota Constitution, which provides as follows:

"The legislative assembly shall provide at their first session after the adoption of this constitution, for a uniform system of free public schools throughout the state, beginning with the primary and extending through all grades up to and including the normal and collegiate course."

In 1968 this section was amended, as follows:

"The legislative assembly shall provide for a uniform system of free public schools throughout the state, beginning with the primary and extending through all grades up to and including schools of higher education, except that the legislative assembly may authorize tuition, fees and service charges to assist in the financing of public schools of higher education."

■ In construing a written constitution we must make every effort to determine the intent of the people adopting it. *State ex rel. Vogel v. Garaas,* 261 N.W.2d 914 (N.D.1978); *State ex rel. Sanstead v. Freed,*

251 N.W.2d 898 (N.D.1977); *State ex rel. Lein v. Sathre,* 113 N.W.2d 679 (N.D.1962); *State ex rel. Lyons v. Guy,* 107 N.W.2d 211 (N.D.1961); 1 Cooley's Constitutional Limitations (8th ed.), Ch. 4, p. 124.

■ We must examine the whole instrument in order to determine the true intention of every part so as to give effect to each section and clause. If different portions seem to be in conflict, we must make a true effort to harmonize them if practicable.

■ In interpreting clauses in a constitution we must presume that words have been employed in their natural and ordinary meaning.

"As Marshall, Ch. J., says: 'The framers of the constitution, and the people who adopted it, "must be understood to have employed words in their natural sense, and to have intended what they have said." ' " 1 Cooley's Constitutional Limitations, p. 130.

Both parties contended that contemporaneous construction, as an aid in construction and interpretation of the constitution, recognized in this court in *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D.1977), and its predecessors, favored its point of view on the construction of § 148 of the North Dakota Constitution. We, however, note that in *Sanstead* an early Attorney General's opinion was available, in addition to long-standing practices, whereas here we have only early legislative Acts carried forward, but relatively little evidence on practices except for the current practice of the Bismarck School District.

The Legislature, in 1890, enacted Chapter 62, the title of which provides as follows:

"AN ACT to Provide for a Uniform System of Free Public Schools Throughout the State and to Prescribe Penalties for Violation of the Provisions Thereof."

This was a comprehensive Act which covered district [common] schools and special district schools. Under the provisions of sections 71 through 74 of chapter 62, the school board was required to provide the necessary supplies for the schools and all necessary

and suitable furniture, maps, charts, and apparatus, including Webster's Unabridged Dictionary. However, no special mention was made of textbooks. Section 130 of chapter 62 directed certain topics be taught by the use of a textbook by pupils able to use a textbook (now found in § 15–38–07, NDCC).

Under the provisions of paragraph 1 of section 181, chapter 62, the school board of a special district was required:

"To establish a system of graded common schools, which shall be free to all children of legal school age residing within such special district, and shall be kept open not less than six nor more than ten months in any year."

Paragraph 6 of section 181, chapter 62, required the board:

"To purchase, sell, exchange, improve and repair school apparatus, *text books for the use of the pupils*, furniture and appendages, and to provide fuel for the schools." [Emphasis added.]

These provisions have been carried forward and are now found in § 15–29–08, NDCC, which specifies the general powers and duties of a school board. Section 140, chapter 62, required compulsory attendance at school for those children between eight and fourteen years of age. This concept is presently found in chapter 15–34, NDCC.

The 1890 Legislature also enacted chapter 64, establishing independent school districts. Section 12 of chapter 64, among other things, directed the board to levy taxes to raise funds

"To purchase, exchange, improve and repair school apparatus, books, furniture and appendages."

Section 19 of chapter 64 required the board

"To purchase, sell, exchange, improve and repair school apparatus, *books for indigent pupils*, furniture and appendages, and to provide fuel for schools." [Emphasis added.]

This section was carried forward in § 15–32–07, NDCC, until repealed in 1961.

Comparing sections 12 and 19 of chapter 64 with section 181 of chapter 62 results in confusion. The Legislature made no mention or provision for books in the common district schools, but in the special school districts it provided that the board would have the authority to purchase and sell books for the use of pupils, and in the independent school districts it gave the board authority to purchase and sell books for indigent pupils. It is difficult to determine what inferences may be drawn from these provisions.

In 1895 the North Dakota Legislature enacted chapter 109, the title of which provides as follows:

"AN ACT to Provide for Free Text Books and School Supplies for the Use of the Pupils in the Public Schools of North Dakota."

The body of the Act, however, conditions the free textbooks upon a favorable election by a majority of qualified electors of the district, which election is brought about by a presentation of a petition signed by a majority of the qualified electors. The title of the Act is misleading when compared to the body of the Act. Chapter 109, in part, has been carried forward and is found in §§ 15–43–01, 15–43–04 and 15–43–09, NDCC.

From this examination we are left with a firm conviction that the legislative acts referred to do not lend any significant comfort or aid to the resolution of the basic question under consideration, namely, what does the term "uniform system of free public schools" mean? Contemporaneous construction in this instance is not helpful to either party. The Journal entries of the constitutional convention are not very helpful in determining the meaning of the language, "free public schools."

The first item relating to public schools introduced at the North Dakota Constitutional Convention, as found in the Journal, was File No. 47, § 2, which provided, in part:

"It shall be the duty of the Legislature to establish and maintain a system of free public schools, adequate for education of all children in the state, between the ages of six and eighteen years, inclu-

sive, in the common branches of knowledge, and in virtue and christian morality."

File No. 47 was referred to the Committee of the Whole, where its provisions were restructured, given section numbers 150 through 156, and placed under Article VIII.

In the final revision, § 151 became § 148 as it was actually adopted.

The North Dakota convention also had available a constitution introduced by Mr. Williams, which was noted as File No. 106. Article VIII of the "Williams" constitution, as may be pertinent to our question, provided as follows:

"SECTION 1. The general assembly shall establish and maintain throughout the state a uniform system of free public schools."

"SECTION 3. In each school district one or more *free public schools* shall be maintained at least four months in every year." [Emphasis added.]

The "Williams" constitution, in every material item under consideration here, paralleled the constitution finally adopted by the convention.

From this brief review it is clear that the framers consistently had in mind a free public school.

A short survey of the constitutional provisions of other states and their case law will shed some light on our question.

ARIZONA:

"The Legislature shall provide for a system of common schools by which a free school shall be established . . ." Constitution, Article XI, § 6.

In *Carpio v. Tucson High School District No. 1 of Pima County*, 111 Ariz. 127, 524 P.2d 948 (1974), *cert. denied* 420 U.S. 982, 95 S.Ct. 1412, 43 L.Ed.2d 664, the court had under consideration Article XI, § 6, of the Arizona Constitution. The court held that textbooks were not required to be furnished to high school students. However, the court referred to an earlier decision, *Shoftstall v. Hollins*, 110 Ariz. 88, 515 P.2d 590 (1973), where the court held that these con-

stitutional provisions had been satisfied when the legislature provided for the means of establishing required courses, qualifications of teachers, textbooks to be used in common schools, etc. Considering this statement and the statement in *Carpio* that "textbooks have not been provided free in high schools as they have been in the common schools" leaves the impression that under the constitutional provisions of Arizona textbooks in common schools were provided free of charge.

COLORADO:

"The general assembly shall . . . provide for the establishment and maintenance of a thorough and uniform system of free public schools . . ." Constitution, Art. IX, § 2.

In *Marshall v. School District RE # 3 Morgan County*, 553 P.2d 784 (Colo.1976), the court held that the school district was not required to furnish books free of charge to all students.

INDIANA:

". . . it shall be the duty of the General Assembly . . . to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." Constitution, Article 8, Section 1.

In *Chandler v. South Bend Community School Corporation*, 160 Ind.App. 592, 312 N.E.2d 915 (1974), the court held that this constitutional provision did not require textbooks to be provided free, but merely to provide a system of common schools where tuition would be without charge.

ILLINOIS:

"Education in public schools through the secondary level shall be free." Constitution, Article X, section 1.

In *Beck v. Board of Education of Harlem Consolidated School District No. 122*, 63 Ill.2d 10, 344 N.E.2d 440 (1976), the court held that workbooks, and other educational material, were not textbooks so as to come within the statutory provision of free text-

books, and as such it did not preclude the school board from charging the parents a fee for supplying the students with such material.

Earlier, in *Hamer v. Board of Education of School District No. 109*, 47 Ill.2d 480, 265 N.E.2d 616 (1970), the court was specifically concerned with the constitutional provision and held that under its provisions the school board was not prohibited from purchasing textbooks and renting them to pupils. It further held that the legislature had the power to direct the district school boards to issue textbooks to students free of charge but the constitution did not require it. In a related case entitled *Hamer v. Board of Education of School District No. 109, County of Lake*, 9 Ill.App.3d 663, 292 N.E.2d 569 (1973), the court in effect re-affirmed its earlier decision in the *Hamer* case.

## WISCONSIN:

"The legislature shall provide . . . for . . . district schools . . . and such schools shall be free and without charge for tuition . . ." Constitution, Article X, section 3.

The court in *Board of Education v. Sinclair*, 65 Wis.2d 179, 222 N.W.2d 143 (1974), held that the schools may charge a fee for the use of textbooks and items of similar nature authorized by statute and that such did not violate the constitutional provision commanding that schools shall be free without charge for tuition for all children. It basically held that the term "free" referred to school buildings and equipment and what is normally understood by the term "tuition."

## IDAHO:

". . . it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools." Constitution, Art. 9, sec. 1.

In *Paulson v. Minidoka County School District No. 331*, 93 Idaho 469, 463 P.2d 935 (1970), the court held that school districts could not charge students for textbooks under the state constitutional provision. It also held that public high schools in Idaho are "common schools."

## MICHIGAN:

"The legislature shall maintain and support a system of free public elementary and secondary schools . . ." Constitution, Article 8, § 2.

In 1908 the Michigan Constitution, Article 11, § 9, in part provided:

"The legislature shall continue a system of primary schools, whereby every school district in the state shall provide for the education of its pupils without charge for tuition . . ."

The Michigan court in *Bond v. Public Schools of Ann Arbor School District*, 383 Mich. 693, 178 N.W.2d 484 (1970), held that the 1963 constitutional provision meant that books and school supplies were an essential part of the system of free public elementary and secondary schools and that the schools should not charge for such items. We note that the 1908 Constitution provided "without charge for tuition," whereas the 1963 Constitution provides for a system of "free public elementary and secondary schools."

## MONTANA:

"It shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools." Constitution, Article XI, Section 1.

In *Granger v. Cascade County School District No. 1*, 159 Mont. 516, 499 P.2d 780 (1972), the school district, as the school district here, contended that the pertinent language simply meant "tuition-free" as far as required courses were concerned and did not prohibit fees and charges for optional extra-curricular or elective courses and activities. The Montana parents, however, contended that the schools could not impose fees or charges for anything, whether elective or required, that is encompassed in the constitutional requirement of a "thorough system of public, free, common

schools." The fees involved more than just charges for workbooks and textbooks, as in this case. The Montana Supreme Court answered the question in the following manner:

"We believe that the controlling principle or test should be stated in this manner: Is a given course or activity reasonably related to a recognized academic and educational goal of a particular school system? If it is, it constitutes part of the free, public school system commanded by Art. XI, Sec. 1 of the Montana Constitution and additional fees or charges cannot be levied, directly or indirectly, against the student or his parents. If it is not, reasonable fees or charges may be imposed."

The court, however, pointed out that its decision does not apply to supplementary instruction offered by the school district on a private basis during the summer recess or at special times. It should be observed that the school district in the *Granger* case, as well as in the instant case, argued that they had a system of waivers and charges for welfare recipients and other cases of economic hardship. The court rejected this argument.

### NEW MEXICO:

"A uniform system of free public schools sufficient for the education of, and open to, all children of school age in the state shall be established and maintained." Constitution, Article XII, § 1.

The court, in *Norton v. Board of Education of School District No. 16*, 89 N.M. 470, 553 P.2d 1277 (1976), held that under this constitutional provision courses required of every student shall be without charge to the student. However, reasonable fees may be charged for elective courses. The court also recognized that the board of education shall define what are required or elective courses in the educational system of New Mexico.

### SOUTH DAKOTA:

". . . it shall be the duty of the legislature to establish and maintain a general and uniform system of public schools wherein tuition shall be without charge." Constitution adopted 1889, Article VIII, § 1.

We have found no South Dakota case law on the question of tuition or textbooks.

### WEST VIRGINIA:

"The legislature shall provide by general law, for a thorough and efficient system of free schools." Constitution, Article XII, Section 1.

The court in *Vandevender v. Cassell*, 208 S.E.2d 436 (W.Va.1974), held that furnishing textbooks free to needy students satisfied the constitutional requirement. But two of the five judges, in a concurring opinion, stated that they did not interpret "free" as pertaining only to indigent pupils. They further stated:

"It is clear to me [us], however, that where state constitutions contain language providing for free schools, such as Article XII, Section 1 of the West Virginia Constitution, that this means free schools for students of all economic classes."

### MISSOURI:

". . . schools and the means of education shall forever be encouraged in this state. [The legislature was required to establish schools] as soon as practicable and necessary, where the poor shall be taught gratis." Constitution of 1820, art. VI, § 1.

"A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law. . . ." Constitution, Art. IX, § 1(a), source Constitution of 1875, Art. XI, §§ 1 and 3.

The court held in *Concerned Parents v. Caruthersville School District No. 18*, 548 S.W.2d 554 (Mo.1977), that under this constitutional provision school districts were

prohibited from charging registration fees or course fees in connection with courses for which academic credit was given.

WASHINGTON:

"The Legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established." Constitution, art. 9, sec. 2.

The Supreme Court of the State of Washington, in *Litchman v. Shannon*, 90 Wash. 186, 155 P. 783 (1916), said:

"Public schools are usually defined as schools established under the laws of the state, usually regulated in matters of detail by local authorities in the various districts, towns, or counties, and maintained at the public expense by taxation, and open without charge to the children of all the residents of the town or other district."

Earlier, the Supreme Court of Washington, in *School District No. 20, Spokane County v. Bryan*, 51 Wash. 498, 99 P. 28 (1909), defined "common school" as found in its constitution as "one that is common to all children of proper age and capacity, free and subject to, and under the control of, the qualified voters of the school district."

From this study we have concluded that the courts have consistently construed the language "without payment of tuition" or "wherein tuition shall be without charge" or such similar language to mean that a school is prohibited from charging a fee for a pupil attending school. This language has also been construed as not prohibiting the charging of fees for textbooks.

■ However, as to constitutions containing language such as "free public schools" or "free common schools" or similar language, the courts have generally

held, with a few exceptions, that this language contemplates furnishing textbooks free of charge, at least to the elementary schools. The exceptions have generally relied upon extrinsic material such as contemporary construction, history, or practices, as well as the language itself. Although the cases involving language similar to that contained in the North Dakota Constitution are not in themselves conclusive, they nevertheless are helpful, if not persuasive.

A comparison of the key constitutional provisions and existing case law of states which entered the Union at the same time and under similar conditions as North Dakota will be very helpful and valuable in determining the intent of the people of North Dakota in adopting § 148 of the North Dakota Constitution.

At the time North Dakota formulated and adopted its Constitution, three other States—Montana, South Dakota, and Washington—were going through a similar process. All four States were included in the same Enabling Act, Chapter 180, 25 Statutes at Large 676, and were required to meet the conditions in § 4, which provided:

"That provision shall be made for the establishment and maintenance of systems of public schools, which shall be open to all the children of said states, and free from sectarian control."

The key language in the constitutional provisions of the four States are as follows:

Montana: ". . . thorough system of public, free common schools."

South Dakota: ". . . uniform system of public schools wherein tuition shall be without charge." [1]

North Dakota: ". . . uniform system of free public schools throughout the state . . ."

Washington: ". . . uniform system of public schools . . ."

---

1. The phrase "wherein tuition shall be without charge" became part of the South Dakota Constitution as a result of the 1889 Constitutional Convention. Prior to that time, South Dakota held a Constitutional Convention in 1883 which, as is material here, merely provided for a general and uniform system of public schools.

The proposed Constitution of 1883 was not recognized by Congress. South Dakota, in 1885, again held a Constitutional Convention which adopted substantially the same provisions as those proposed by the 1883 convention. It was not until the 1889 Convention that the phrase relating to tuition was added.

We are impressed with the different language employed in the constitutions of the four states, Montana, South Dakota, North Dakota, and Washington, which came into the Union at the same time and under the same Enabling Act. We must assume that each state had available the same information as the other states and was free to choose its constitutional provisions, provided they met the requirements of the Enabling Act. It is significant to note that Montana and North Dakota adopted the "free common schools" and the "free public schools" concept, whereas South Dakota adopted the "public schools wherein tuition shall be without charge"[1] concept, and Washington merely provided for a "uniform system of public schools."

We also note that the Washington Supreme Court in the *Bryan* case, *supra*, under the Washington Constitution held that a common school district is free for all children of proper age even though its constitution merely required a uniform system of public schools. Therefore, if the term "common schools" implies a school for which no tuition may be charged, then the expression "free public schools" should mean something more than merely not permitting the charging of tuition. This position becomes persuasive when we recognize that other states specifically provided that no charge for "tuition" would be allowed.

█ If the framers of the North Dakota Constitution and the people of North Dakota had in mind only to provide public schools without charging tuition they could have, and probably would have, used the language "without payment of tuition" or "wherein tuition shall be without charge," rather than the language "free public schools." We must assume that the framers of the constitution made a deliberate choice of words which reflected or expressed their thoughts. The term "free public schools" without any other modification must necessarily mean and include those items which are essential to education.

It is difficult to envision a meaningful educational system without textbooks. No education of any value is possible without school books. See, *Crowley v. Bressler*, 181 Misc. 59, 41 N.Y.S.2d 441 (1943).

We cannot overlook the fact that attendance at school between certain ages was compulsory from the very beginning under penalty of law. This lends support to the contention that textbooks were to be included in the phrase "free public schools."

█ We have also examined the North Dakota constitutional debates but have not been able to uncover any helpful information. We must therefore resolve the basic question primarily on the language found in the North Dakota constitutional provision.

The word "free" takes on its true and full meaning from the context in which it is used. There can be no doubt that the term means "without charge or cost." In the absence of any other showing we must conclude that the term was commonly understood by the people to mean "without charge or cost." Books and school supplies are a part of the education system. This is true whether we apply the necessary elements of the school's activities test or the integral part of the educational system test.

█ After a review of the case law and constitutional provisions of other states, and after a careful analysis of the key language of the four states which were admitted under the same Enabling Act, we have come to the conclusion that the term "free public schools" means and includes textbooks, and not merely "free from tuition."

However, our conclusion must necessarily apply only to the elementary schools, as they are the only ones covered in this action. The action in district court was not a class action and factually involved only students enrolled in the elementary schools. The briefs, arguments, and whatever practices were involved related only to elementary schools. This opinion therefore is limited to textbooks used in elementary schools in the required subjects, as set out in § 15–38–07, North Dakota Century Code.

Sections 15–43–07, 15–43–08, 15–43–09, 15–43–10, and 15–43–12, North Dakota Century Code, to the extent that they apply to elementary textbooks, are in conflict with § 148 of the North Dakota Constitution and are therefore invalid and unconstitutional as to elementary school textbooks.

■ Cardiff and other parents have failed to establish on what statutory grounds, or under what rule, they are entitled to attorney fees. We therefore deny the request for attorney fees.

The judgment and order of the district court are both affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.