Honorable Peggy Johnson, State Representative, 35th District Honorable Harold Hochstatter, State Senator, 13th District Co-Chairs Joint Select Committee on Education Restructuring P.O. Box 40600 Olympia, WA 98504-0600
Dear Representative Johnson and Senator Hochstatter:
By letter previously acknowledged, you have requested our opinion on the following questions:
 1. Under Article III, Section 22 of the Washington State Constitution, the Superintendent of Public Instruction is charged with "supervision of all matters pertaining to public schools." What grant of authority and responsibility is given to the Superintendent of Public Instruction by the term "supervision" under this section? Does the term "supervision" place limits on the authority of the Superintendent of Public Instruction?
 2. Article III, Section 22 of the Washington State Constitution gives the Superintendent of Public Instruction supervision over all matters pertaining to public schools. Article IX, Section 2 defines public schools as including common schools, normal schools and technical schools. What is the scope of authority and responsibility of the Superintendent of Public Instruction for these schools as they exist today?
 3. Can the supervisory authority of the Superintendent of Public Instruction under Article III, Section 22 of the State Constitution be delegated?
We answer your questions in the manner indicated below, supplying a brief summary of the answer to each question at the beginning of the Analysis on that question.
 BACKGROUND
Your questions are about the interpretation of a clause in the Washington State Constitution. Article III, Section 22 defines the powers and duties of the Superintendent of Public Instruction and reads as follows:
 The superintendent of public instruction shall have supervision over all matters pertaining to public schools, and shall perform such specific duties as may be prescribed by law. He shall receive an annual salary of twenty-five hundred dollars, which may be increased by law, but shall never exceed four thousand dollars per annum.
Const. Art. III, § 22. (Emphasis added.) The underscored portions of the section are the basis for your questions.
 BRIEF ANSWER
The constitutional language speaks for itself, and would have to be interpreted in light of specific questions. Article III, Section 22 involves three separate elements: (1) a grant of the power of "supervision" to the Superintendent of Public Instruction over whatever "general and uniform" system of public schools the Legislature might establish; (2) a limitation upon the Legislature's power to infringe upon the Superintendent's powers of "supervision"; and (3) a grant of discretion to the Legislature to prescribe specific duties for the Superintendent consistent with the "supervision" language.
 ANALYSIS
As you note in your request, our office has considered this question in two formal opinions and in several informal letters and memoranda. In our two previous formal opinions, AGO 1961-62 No. 2 and AGO 1975 No. 1, we did not attempt to define the precise meaning of "supervision," but applied it to specific fact patterns. There is no way to provide an exhaustive definition of a constitutional term which will cover every conceivable issue.
There are constitutional principles to guide us in interpreting the term "supervision." First, it is a cornerstone of constitutional interpretation that the Legislature's discretion is unrestrained except where the state constitution limits that discretion (or where it is pre-empted by the constitution and laws of the United States). The courts have recognized this discretion in several cases. In Moses Lake School District No. 161 v. BigBend Community College, 81 Wn.2d 551, 503 P.2d 86 (1972), the State Supreme Court upheld the Legislature's action creating a new separate system of community colleges and transferring to the new system the functions and property of certain local school districts. See also, Yelle v. Bishop, 55 Wn.2d 286, 347 P.2d 1081
(1959), upholding an extensive restructuring of the powers and duties of the State Auditor.
Thus, Article III, Section 22 should be read primarily not as a conferral of powers on the Superintendent of Public Instruction but as a limit on the powers of the Legislature to define the Superintendent's duties. Note the rest of the sentence in which the "supervision" clause appears:
 The superintendent of public instruction shall have supervision over all matters pertaining to public schools, and shall perform such specific duties as may be prescribed by law.
Const. Art. III, § 22. (Emphasis added.) The "supervision" language appears in the context of a recognition that, insofar as it respects the "supervision" role, the Legislature is quite free to shape the state's education system as it may choose, and to define the Superintendent's role within that system.
We recognized this pattern the first time we considered the "supervision" language in a formal opinion. In AGO 1961-62 No. 2, we concluded that the Legislature could not constitutionally enact a statute making the Superintendent subordinate to the State Board of Education. Such a statute, we found, would deprive the Superintendent of the "supervision" role, because the Superintendent would himself be "supervised" by another agency. Thus, while the Legislature has many choices in structuring the public education system, the Superintendent is entitled to remain the "supervisor" of the system.
Beyond that general formulation, the extent of the meaning of "supervision" would have to be applied to specific ideas or proposals. In the second part of this question, you have asked whether the word "supervision" implies any limitation on the powers which could constitutionally be granted to the Superintendent. We are not aware of any, to the limited extent we can anticipate all the possibilities. In any proposal affecting the role of the Superintendent of Public Instruction, the question to ask is:
 Does this proposal place "supervision" of the public system in the hands of the Superintendent of Public Instruction?
If the proposal subordinates the Superintendent to some other officer or body (as discussed in AGO 1961-62 No. 2) or shifts so many responsibilities to other officers or agencies that the Superintendent no longer "supervises" the public school system, the proposal is probably unconstitutional. Otherwise, the Legislature is free to assign specific roles as it thinks best.
2. Article III, Section 22 of the Washington State Constitution gives the Superintendent of Public Instruction supervision over all matters pertaining to public schools. Article IX, Section 2 defines public schools as including common schools, normal schools and technical schools. What is the scope of authority and responsibility of the Superintendent of Public Instruction for these schools as they exist today?
 BRIEF ANSWER
The term "public schools" denotes the common school system of primary and secondary education, including such high schools, normal schools, and technical schools as the Legislature may provide. The Constitution does not confer any supervisory power on the Superintendent for the state's higher education system. There are currently no "normal schools" or "technical schools" included within the common school system, although the Legislature could establish such schools.
 ANALYSIS
Your second question as phrased breaks into two parts: 1) "What is the nature of the `supervisory' authority of the Superintendent?" and 2) "What are the `public schools' over which such authority is to be exercised?" The first part is essentially the same as your Question 1, and we have analyzed that issue above. In this section of the Opinion, we will concentrate on the second part of your second question: defining the institutions that are a part of the common school system.
The term "public schools" is not defined in Article III, but is somewhat clarified by a related provision of the Constitution, Article IX, Section 2:
 The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools.
We note initially that in defining the term "public schools," Article IX, Section 2 does not require the Legislature to create high schools, normal schools, or technical schools. The best grammatical reading of the phrase ". . . as may hereafter be established . . .," given the sentence in which it appears, is that it modifies ". . . such high schools, normal schools, and technical schools." Thus, the Legislature must establish and provide for "common schools," but has some choice of what additional types of schools to create as part of the "general and uniform system of public schools."
However, as to high schools, our courts have ruled that as a practical matter, such schools have long been integrated into the public school system, such that they are now a required component of the "public education" which Article IX, Section 1 of the Constitution requires the state to provide. Seattle Sch. Dist. No.1 v. State, 90 Wn.2d 476, 585 P.2d 71 (1978) (discussion in90 Wn.2d at 521-522, suggesting that, having established a high school system, the Legislature may lack the authority to disestablish it). The case law thus establishes that high schools are "common schools" and, therefore, are certainly "public schools" as defined both in Article IX, Section 2, and in Article III, Section 22 of the Constitution.
It is also clear from the case law that the state's publiccolleges and universities are not "public schools" for constitutional purposes. This was established as early as Litchmanv. Shannon, 90 Wn. 186, 155 P. 783 (1916), in which the Court found that the University of Washington was not a "public school" and, therefore, was authorized to charge tuition fees for attendance. The Litchman court noted that the University had been established in territorial days and had charged tuition fees before statehood, giving rise to the inference that the drafters of the Constitution knew the University was not "free" and yet did not include any reference to it in the definition of "public schools" contained in Article IX, Section 2. Id., 90 Wn. At 190-191. Since the colleges and universities are not part of the "public schools" for constitutional purposes, it follows that the "supervision" language defining the constitutional role of the Superintendent of Public Instruction does not extend to these institutions of higher education.
Community colleges were originally the thirteenth and fourteenth grades of the common school system. See Laws of 1945, ch. 115, §§ 2 and 5. As such, these schools were originally under the "supervision" of the Superintendent of Public Instruction. In 1967, the Legislature created a state community college system as a post-secondary system of higher education, transferred to the new system any school district assets relating to the thirteenth and fourteenth grades, and authorized community college district boards of trustees to award suitable diplomas, non-baccalaureate degrees, or certificates. See Laws of 1967, ch. 8. The 1967 law was upheld over several constitutional challenges in Moses LakeSchool District, supra.
Having concluded that elementary, intermediate, and high schools are "public schools" subject to the constitutional "supervision" of the Superintendent of Public Instruction, and having concluded that community and four-year colleges are not "public schools," we turn to a brief discussion of the two other categories mentioned as "public schools" in Article IX, Section 2: normal schools and technical schools.
State-supported normal schools did not exist in Washington before statehood, but the Enabling Act donated one hundred thousand acres of federal land to the state for the support of normal schools. Enabling Act § 17, 25 Stat. 681 (1889). The first Legislature established normal schools at Cheney and at Ellensburg ". . . to train teachers in the art of instructing and governing in the public schools." Act of Mar. 23, 1890, Laws of 1889-1890, § 1, p. 278. A third normal school, at New Whatcom (later Bellingham) was authorized by the 1895 Legislature. The Superintendent proposed that the general management and courses of training be uniform for the normal schools (11 Washington State Superintendent of Public Instruction Biennial Report 64-65, 289 (1892), and the Legislature concurred by enacting a bill creating uniform entrance requirements, curricula, diplomas, etc. Act of Mar. 10, 1893, Laws of 1893, ch. CVII, §§ 1-23, p. 254-63.
All of the normal schools were eventually converted to full four-year post-secondary institutions of higher education. All award baccalaureate and graduate degrees. They train teachers but also offer courses in many different areas. The conversion to post-secondary institutions began when the Legislature granted these schools the power to grant a B.A. degree in education for the completion of a four-year course of study. Laws of 1933, ch. 13, § 1. With the conversion of the original normal schools to past-secondary education institutions, there are no remaining "normal schools" in this state, although the Legislature could in theory create more.
Washington has never had any public-supported school called a "technical school." Beale, supra, suggests that the drafters of the Constitution may have been referring to the state agricultural college which had been statutorily authorized in 1865 but was not yet in operation as of statehood. L.K. Beale, Charter Schools,Common Schools, and the Washington State Constitution, 72 Wn. L. Rev. 535, p. 558 (1997) Beale points out that the original bill creating what is now Washington State University described it as "State School of Science" to be governed by a "Technical Commission." The bill was later amended to describe the institution as the ". . . state agricultural college and school of science." H.R. 90, 1st Leg. (1889). Beale, Wash. L. Rev. 535, 558 n. 185. Thus, the final 1889 legislation did not describe the new college as a "technical school," nor did it grant the Superintendent of Public Instruction any "supervision" over the college. Since there were no "technical schools" created either before or at the time of statehood, and since we are aware of no debate or contemporary discussion about the term at the time the Constitution was drafted, we can only speculate that the framers of the Constitution contemplated that the Legislature might wish to create one or more "technical" schools which were distinct both from the "common schools" and from the higher education system. In theory at least, the Legislature still has this option.
To summarize then, the Superintendent of Public Instruction has "supervision" over the elementary, intermediate, and secondary (high) schools of the state, all of which are part of the "common school" system. The Superintendent's "supervision" would theoretically extend also to "normal schools" or "technical schools" which the Legislature might create, but there are no current examples of either category. The Constitution did not place the Superintendent in a "supervision" role with respect to colleges and other post-secondary educational institutions. However, the Legislature remains free to expand the Superintendent's role beyond the constitutional minimum, if it so desires.
3. Can the supervisory authority of the Superintendent of PublicInstruction under Article III, Section 22 of the StateConstitution be delegated?
 BRIEF ANSWER
The answer depends on the meaning of "delegation." Under the traditional meaning of "delegation," the Superintendent may lawfully delegate her constitutional and statutory responsibilities to employees of her agency, who act under standards established by the Superintendent and under her supervision. The Legislature may not "delegate" the Superintendent's "supervision" responsibilities to other officers or agencies. However, the Legislature may restructure the public education system in a variety of ways so long as it respects the "supervision" role of the Superintendent.
 ANALYSIS
In your question, you have used the word "delegate." This term most often connotes the conferral by an officer or government body of one or more of the delegating body's own powers. The largest body of law concerns delegation by the Legislature of some portion of the legislative power, such as by authorizing administrative agencies to adopt rules which carry the force of law. The issue of delegating legislative power does not appear to be part of your question.
There could also be an issue of the extent to which an executive branch officer (such as the Superintendent of Public Instruction) could delegate her constitutional or statutory duties to others. For instance, in State v. Yelle, 4 Wn.2d 327, 103 P.2d 372 (1940), the Supreme Court held that the State Auditor was not required to personally perform all the duties assigned to him by the law, but could lawfully delegate the performance of audit examinations to deputies and assistants. In McNiece v. Washington StateUniversity, 73 Wn. App. 801, 871 P.2d 649 (1994), the Court of Appeals held that the University's Board of Regents had lawfully delegated to a subordinate officer the authority to terminate employees. We have also considered this type of delegation in previous opinions. In AGO 1988 No. 26, we found that a municipal treasurer could not delegate to a bank or financial institution the authority to redeem municipal warrants. In AGO 1987 No. 7, we found that the Higher Education Coordinating Board could not delegate to its executive director the power to adopt rules. In AGLO 1978 No. 35, we decided that the Data Processing Authority could delegate to the Supreme Court the authority to acquire data processing equipment. In each of these cases, the authority to delegate depended on the language of the law setting forth the powers of the delegating officer or agency. A "core" discretionary function, such as the authority to adopt rules, generally cannot be delegated. More general functions, such as personnel decisions and performance of auditor examinations, may be delegated to subordinates where the "delegating" officer retains the ultimate authority. However, absent very specific authority, an officer may not delegate his authority to a private institution or other party not accountable to the delegating officer. Having stated these very general rules, we suggest that any particular delegation would have to be analyzed with reference to the particular facts and law in question.
From your question, however, it appears you are also asking about the authority of the Legislature to "delegate" the constitutional powers of the Superintendent to other officers or agencies. It is of course an elementary principle that the Legislature may not enact statutes which are inconsistent with the Constitution. See,e.g., Gerberding v. Munro, 134 Wn.2d 188, 949 P.2d 1366 (1998). Therefore, the Legislature could not assign to some other agency or officer the "supervision" responsibilities of the Superintendent of Public Instruction over the state's public school system. Such an act would be directly inconsistent with the express language of the Constitution.
However, as we noted in our answer to your first question, the "supervision" language appears in context of a sentence granting the Legislature considerable discretion in assigning the specific powers and duties of the Superintendent. The Constitution provides this test against which any legislation would be analyzed: does this legislation preserve the "supervision" of the Superintendent of Public Instruction over the public schools?
If the answer to the question is "yes," the legislation is consistent with Article III, Section 22, of the Constitution. So long as the "supervision" role of the Superintendent is preserved, the Legislature may create offices and agencies and determine their specific roles and duties in a great variety of ways.
We trust the foregoing will be useful to your Committee.
Very truly yours,
CHRISTINE O. GREGOIRE
JAMES K. PHARRIS Sr. Assistant Attorney General